GRIMES, APPELLANT, *v.* MAYFIELD, ADMR.; MANSFIELD PRODUCTS COMPANY, APPELLEE.

(No. CA-2614—Decided January 19, 1989.)

*Daniel K. Boda,* for appellant.

*Baran, Piper, Tarkowsky & Fitzgerald* and *John Tarkowsky,* for appellee Mansfield Products Co.

WISE, J. This is an appeal from a judgment of the Richland County Court of Common Pleas overruling the motion for a new trial of plaintiff-appellant Michael Grimes ("employee").

Employee argues the following assignment of error:

"The trial court erred in its finding that the plaintiff was not entitled to a new trial based upon the weight of the evidence presented at trial."

Employee was employed by defendant-appellee, Mansfield Products Co. ("employer"), as a press operator. On May 23, 1985, while operating his press, employee dislocated his right shoulder. Pursuant to R.C. 4123.519, employee's appeal from a final decision of the Industrial Commission was heard by a jury. The jury returned a unanimous verdict finding that employee was not entitled to workers' compensation benefits. In its opinion denying the motion for a new trial, the court stated, *inter alia:*

"The *injury in this case did occur* while the plaintiff was *at work.* The disputed *factual question* for the jury to resolve, therefore, was whether this *injury* met the requirement for a compensable 'injury' that it *'arose out of'* the *plaintiff's employment.* The jury apparently concluded that an injury produced by sneezing while one's hands are raised to shoulder height is a hazard similarly encountered by the public generally rather than an injury arising out of the plaintiff's employment. [Emphasis added.]

"The Court cannot say that the jury's verdict in this case is so unsustained by the evidence that only [biased] and [prejudiced] minds could have reached that conclusion. Plaintiff's motion for a new trial is accordingly overruled." .

The critical issue in the case at bar in determining whether employee's injury was compensable, based on all the evidence presented, was whether employee's injury did, as matter of law, "arise out of" his employment—a law call, not a fact issue.

Not only did the injury in the case at bar "occur while the plaintiff was at work," as found by the trial court, but there is not a scintilla of evidence that the injury happened other than the way employee described it. The evidence is undisputed that employee was "in the course of his employment"; and the expert medical evidence is undisputed that "it was not so much the sneeze per se," but rather the position of his raised arms and the movement caused by the sneeze that resulted in the shoulder dislocation.

In opening statements, the respective counsel made the following remarks. Counsel for employee stated:

"Now, it has already been indicated to you that there is not going to be a dispute that he injured himself at work and what the injury is going to be, but there is some dispute over exactly how the injury happened, and whether or not that fits the legal test for compensability. That's what you are going to have to decide in this case."

Counsel for employer stated:

"Yes, he was at the workplace at the time he dislocated his shoulder, but I think as the judge will instruct you on the law that alone does not make this a compensable claim.

"* * *

"Again, *we* have *acknowledged* already *this accident did* occur *at* the *workplace,* but, you know, so what? That alone does not make it compensable." (Emphasis added.)

The entire evidence presented to the jury consisted of the following

testimony: (1) the testimony of the employee; (2) the video deposition of a medical expert; and, for the employer, (3) employee's foreman, one Howard Caudill ("foreman"). Employee testified in part:

"Yes, I would have to take one piece from the press behind me which was an electronic press or it was run by itself. I would take the piece off and transfer it on to the press, reach up over my head, push the buttons, reach back in and throw the piece and grab the next one and —

"* * *

"A.    * * * Then I put the one piece in, and I guess I had something in my nose that caused me to sneeze. When I sneezed, I just jerked because I really didn't want to let go of the buttons then you'd have to reset the press.

"Q.    And when you sneezed, what happened to your body, if anything?

"A.    Well, went into a down motion like that because of the sneeze (indicating).

"Q.    And did you feel anything happen to yourself?

"* * *

"A.    Yes, sudden pain in my shoulder. I just fell to the ground because it hurt so bad.

"Q.    What did you do next?

"A.    The press operator behind me seen that I went down, then he went and got one of the other co-workers at the time to help me."

The medical expert testified as follows:

"My opinion is that doing what he did caused his shoulder to dislocate.

"* * *

"Well, I don't think it has anything to do with say, for instance, the pure act of sneezing. If he had had his arms down at the side that would have never happened. * * *

"* * *

"* * * [T]he whole thing was he had his arms up and then in going for-ward, just rotates the arms back and that's what knocked it out.

"* * *

"That if he had his arms at the side it would not have occurred, no.

"* * *

"A.    But again, it was not so much the sneeze per se, it's the movement that it caused.

"Q.    I see. But had it not been for the sneeze the mere fact that his arms were up would not have caused the shoulder dislocation, am I correct?

"A.    No. I don't think that would have caused it. If he had his shoulders up and suddenly moved forward for some reason, yes, I think that it could have happened.

"* * *

"A.    I agree that if his arms were down and he hadn't sneezed, no, he would not have dislocated it."

Employer's sole witness, foreman, testified:

"A.    * * * Shortly after supper one of the die setters came around and got me and said Mike had been injured. And when I got over there, they were taking him out of the pressroom on the electric hand truck, and he appeared to be in a lot of pain. And he told me that he had been reaching to hit the buttons on the press, and he sneezed and it threw his shoulder out when this happened."

An injury sustained by an employee that is compensable under the Workers' Compensation Act "includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). It is undisputed in the case at bar that employee sustained his injury while in the course of his employment.

Employer contends that employee's injury did not "arise out of" his employment because employee

did not demonstrate that his injury occurred as a result of some hazard or risk pertaining to his employment. Employer relies on *Postel* v. *Indus. Comm.* (1955), 163 Ohio St. 617, 57 O.O. 35, 128 N.E. 2d 29, and *Eggers* v. *Indus. Comm.* (1952), 157 Ohio St. 70, 47 O.O. 71, 104 N.E. 2d 681, and further contends that *Waller* v. *Mayfield* (1988), 37 Ohio St. 3d 118, 524 N.E. 2d 458, supports *Postel* and modifies *Indus. Comm.* v. *Nelson* (1933), 127 Ohio St. 41, 186 N.E. 735, which employee relies upon.

We disagree. *Waller* specifically overruled *Postel*. The *Eggers* decision was the precursor of the "Dripps Doctrine" which was legislatively repealed by amendment to R.C. 4123.01(C) following *Dripps* v. *Indus. Comm.* (1956), 165 Ohio St. 407, 60 O.O. 55, 135 N.E. 2d 873. See *Delong* v. *Cooper Tire & Rubber Co.* (1968), 14 Ohio App. 2d 44, 43 O.O. 2d 81, 236 N.E. 2d 220. In fact, *Waller* reaffirms the holding in *Indus. Comm.* v. *Nelson, supra.* The *Waller* court stated at 124, 524 N.E. 2d at 463-464:

"* * * [T]his court adopts the view that an inference will arise finding the fall [sneeze in the case at bar] to be traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises.

"* * * The *Postel* court placed great importance on the fact that the floors of the lobby and elevator cab were dry and that the decedent had not slipped in water, grease or some other foreign matter. Again, as discussed earlier, this brand of reasoning tends to focus on fault or negligence in the determination of whether an injury is compensable or not. This is clearly not in accord with the purpose of workers' compensation. Furthermore, the *Postel* decision was handed down prior to the existence of R.C. 4123.95 [workers' compensation statute shall be liberally construed in favor of employee]. In light of this fact and that *Postel* is based on unsound reasoning, we conclude that, *to the extent that it is inconsistent with our decision* today, it is hereby overruled." (Emphasis added and footnotes omitted.)

Footnote 6, which accompanied the above text, states:

"As Judge Schneider so aptly noted in *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18, 19, 39 O.O. 2d 11, 12, 225 N.E. 2d 241, 243: 'If negligence of an employer is to cast the balance in favor of coverage under the Workmen's Compensation Act, he will have the best of both worlds. When an injury is occasioned by his default, he is shielded from heavy potential liability at common law. When, on the other hand, an injury occurs in the absence of his failure of a common-law duty, his experience rate is unaffected. We cannot approve this novel doctrine * * *.' "

In *Waller,* the Supreme Court stated at 125, 524 N.E. 2d at 464:

"* * * Therefore, we also hold that in a workers' compensation case where idiopathic[1] causes for an unexplained fall [sneeze] have been eliminated, an inference arises that the fall [sneeze] was traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises. Such a result does not relieve claimants of their burden of proving causal connection to employ-

---

1 "The term 'idiopathic' is defined as 'peculiar to the individual.' Webster's Third New International Dictionary (1986) 1123. For workers' compensation purposes, idiopathic refers to an employee's pre-existing physical weakness or disease which contributes to the accident. 1 Larson, The Law of Workmen's Compensation (1985) 3-308, Section 12.00." *Waller, supra,* at fn. 3.

8

ment. [That has been admitted in the case at bar.] The inference is reasonable that the fall [sneeze] was caused by the employment environment once claimant meets his burden of eliminating idiopathic causes and there is no evidence that any force or condition independent of the employment caused the fall [sneeze]."

We therefore conclude, in light of the Supreme Court's holding in *Waller,* that a motion for a directed verdict at the close of all the evidence in the case at bar should have been granted. Further, we conclude that had a motion for judgment notwithstanding the verdict been made after trial, same should have been granted. Neither motion having been made, we conclude that the trial court should have granted the motion for a new trial and the same is hereby granted.

This matter is remanded to the trial court for further proceedings according to law.

*Judgment reversed and cause remanded.*

PUTMAN, P.J., and MILLIGAN, J., concur.