**THE STATE ex rel. WEBB**

v.

**INDUSTRIAL COMMISSION OF OHIO et al.**

[Cite as *State ex rel. Webb v. Indus. Comm.* (1991), 76 Ohio App.3d 701.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–100.

Decided Dec. 24, 1991.

*Butkovich, Schimpf, Schimpf & Ginocchio Co., L.P.A., J. Kent Breslin* and *James A. Whittaker,* for relator.

*Lee Fisher,* Attorney General, *Jeffery W. Clark* and *George Revta, Jr.,* Assistant Attorneys General, for respondents Industrial Commission of Ohio and Bureau of Workers' Compensation.

*Thompson, Hine & Flory, Edna Scheuer* and *Michael Soto,* for respondent Cincinnati Milacron, Inc.

McCORMAC, Judge.

This mandamus action was referred to Referee Kenneth W. Macke with full powers pursuant to Civ.R. 53. In response thereto, he filed his report on July 22, 1991, containing findings of fact and conclusions of law with the recommendation that we issue a writ of mandamus to the respondent, Industrial Commission of Ohio, to vacate its April 15, 1987 order and to conduct further proceedings consistent with the report.

Respondents have filed objections to various aspects of the report.

Relator, Randy L. Webb, was initially injured on March 16, 1983 while directing traffic as a security guard with respondent, Cincinnati Milacron, Inc. He suffered an injury to his left knee, and the claim for that injury was fully certified. Two days after the injury, he had surgery to the knee performed by Dr. David J. Greenfield. He received post-operative care from Dr. Greenfield until November 30, 1983, when he was stated to be back at work and functioning well. Dr. Greenfield stated that relator had occasional pains with his knee but no instability and that he was in need of additional therapy but that he did not need to be supervised at the Sports Medical Center any longer.

Approximately two years later on November 3, 1985, relator injured the same knee while playing touch football. He immediately returned to Dr. Greenfield, who reported that the football injury was a new traumatic event but that his industrial injury had left the knee somewhat less stable than normal and that he was more prone to injury because of the initial ligament damage. Dr. Greenfield subsequently stated that "but for the 1983 industrial injury, Mr. Webb probably would not have suffered damage as a result of the 1985 trauma."

The Industrial Commission disallowed relator's claim for the 1985 injury on the basis that it was a substantial intervening accident. The only medical opinions presented to or relied upon by the Industrial Commission were those of Dr. Greenfield.

Undisputedly, the evidence before the Industrial Commission was that relator had an allowable claim for injury to his left knee, which was functionally corrected by surgery but which left the knee in a weakened condition as opposed to the condition of his knee before the injury. There were still consequences of the injury, but the consequences were not sufficient to prevent relator from working at his regular employment and they did not necessitate him seeking additional medical services for a two-year period. While playing touch football, relator jumped to try to block a pass and came down on his left knee, which buckled and was reinjured. His attending physician's unequivocal opinion was that relator would not have suffered

injury from the touch football incident had not his left knee been weakened as a result of the industrial injury.

With these facts before it, the Industrial Commission rejected the claim on the basis that the football injury was a substantial intervening accident, writing off without comment the continuing effects of the 1983 industrial injury which placed the knee in a weakened condition that, according to Dr. Greenfield, was a cause of the further knee injury.

It is important to remember that Dr. Greenfield's opinion has not been challenged or tested as yet. There is no finding or indication that his opinion is not credible. The only possible basis for affirming the order of the Industrial Commission would be that the weakened condition of a person's body that substantially contributes to a new injury cannot be the basis of an industrial claim if the reinjury is from a new traumatic event.

It is fundamental that there must be a causal connection between an injury arising out of and in the course of a workers' employment and his harm or disability. *Gilbert v. Midland–Ross Corp.* (1981), 67 Ohio St.2d 267, 270, 21 O.O.3d 168, 179, 423 N.E.2d 847, 849.

The question is, in the factual situation with which we are faced, what legal test should be used to determine a causal connection. We do not find, nor have any cases from Ohio been cited to us, that deal directly with the issue at hand which is the allowability of a claim for an intervening non-industrial injury to the same member of the injured person's body which was previously injured industrially and which contributed to the new injury by the weakened condition of that member.

There are three possible holdings in other related areas that arguably could be applied to determine the necessary causal relationship in this type of situation.

The referee primarily relied upon "dual causation," pointing to cases that involved industrial disease that found that, when two factors combined to produce illness, each is a proximate cause. *Norris v. Babcock & Wilcox Co.* (1988), 48 Ohio App.3d 66, 67, 548 N.E.2d 304, 305. Respondents challenge the use of these cases, arguing that this principle has no application to injury cases but only to disease cases. Respondents state that the proper causation test is not a "but for" analysis but, rather, direct and proximate causation or aggravation, citing *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 576, 55 O.O. 472, 475, 125 N.E.2d 1, 6; *Schell v. Globe Trucking, Inc.* (1990), 48 Ohio St.3d 1, 548 N.E.2d 920. However, while dual causation may not operate in exactly the same way in an injury case, there is no doubt that two causes can each directly and proximately contribute to an injury. The cases that are cited by

respondents do not negate the fact that there may be more than one direct cause. The "but for" analysis in this case appears to be shorthand for stating that there were two direct and proximate causes of relator's new injury, one of which was the weakened condition of the knee and the other was the trauma which, according to Dr. Greenfield, was not of itself sufficient to cause the injury without the weakened condition.

A second argument advanced by respondents is that, while a work-related aggravation of a pre-existing non-industrial condition is compensable, as held in *Schell v. Globe Trucking, Inc., supra*, a non-work related aggravation of a pre-existing industrial injury or condition is not compensable. That analogy is not a proper one to be drawn from the holding in *Schell*. In *Schell*, an injury in the workplace caused aggravation of a non-industrial condition. Thus, it was held compensable even without the requirement of proving that it was substantial. That holding is transferrable to this situation only to the extent that the industrial condition or occurrence must be a proximate cause of the later injury. In the *Schell* case, if the pre-existing condition were the sole cause of the aggravation, even though it occurred in the workplace, there would be no allowance for an aggravated condition. In this case, if the football injury were the sole cause of the current problem with relator's knee, there would be no compensation.

The third line of cases that might be considered are the death claims where the effects of an allowed claim combine with non-related causes to produce the death of the worker. If the worker dies of a heart attack but the allowed claim is a substantial contributing factor to the time of death, even though not the direct cause, it is compensable. See *Swanton v. Stringer* (1975), 42 Ohio St.2d 356, 71 O.O.2d 325, 328 N.E.2d 794.

The dual causation and death case analogies are not perfect but they are helpful in finding the causal relationship necessary in this situation. The causal relationship must be a direct one but it need not be the sole causal relationship. There must be proof that the weakened condition resulting from the initial injury bore a direct and substantial relationship to the new injury in order for claimant to prevail on the industrial claim. In arriving at that determination, the nature and extent of the trauma of the new event should be taken into account in determining whether the weakened condition had a substantial effect. In other words, if the weakened knee gave way while stepping off a curb, there would be a very strong case for it having a substantial effect, since the new trauma was slight. On the other hand, if there was a crushing injury to the same knee in a severe automobile accident, it would be likely that the previous injury had no substantial effect. The

absence of medical treatment for a two-year period is not irrelevant as suggested by the referee, but it is not controlling either in light of Dr. Greenfield's opinion. It is simply one of the factors that must be taken into account. It is not "some evidence" to prevent the issuance of mandamus relief as claimed by respondents in light of the fact that the Industrial Commission relied upon the report of Dr. Greenfield and that the Industrial Commission made none of the analyses contained herein. It is doubtful that this evidence is, in itself, sufficient to refute the opinion of Dr. Greenfield particularly when it is unknown exactly what the extent of the condition to relator's knee was during the two-year period that he received no medical treatment. As noted previously, Dr. Greenfield said when he released relator in 1983 that further therapy was needed to the knee. It is also no defense to an industrial claim that the injury occurred while relator was playing touch football. The injury was not a result of relator's intentional act.

Respondents' objections are overruled to the extent stated in this opinion, which replaces the report of the referee as our opinion.

A writ of mandamus is issued ordering respondent Industrial Commission of Ohio to vacate the April 15, 1987 order of its staff hearing officers and to conduct further proceedings consistent with this opinion in determining whether the medical treatments received by relator for the November 3, 1985 injury were casually related to the March 16, 1983 industrial injury and to issue an order which either grants or denies the payment of the disputed fee bills and provides the reasoning for the decision and the evidence relied upon.

*Objections overruled*
*and writ of mandamus issued.*

STRAUSBAUGH and TYACK, JJ., concur.