**STEWART, Appellant,**

*v.*

**B.F. GOODRICH COMPANY, Appellee, et al.**

[Cite as *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35.]

Court of Appeals of Ohio,
Washington County.

No. 92CA33.

Decided June 18, 1993.

*Ward, Kaps, Bainbridge, Maurer, Bloomfield & Melvin* and *William H. Melvin,* for appellant.

*Vorys, Sater, Seymour & Pease, Elizabeth T. Smith* and *Theodore P. Mattis,* for appellee.

HARSHA, Presiding Judge.

Harold G. Stewart appeals from a summary judgment entered by the Washington County Court of Common Pleas in favor of his former employer, the B.F. Goodrich Company, denying his claim for workers' compensation benefits.

Appellant assigns the following error:

"The judgment of the Court of Common Pleas of Washington County, Ohio, entered on October 29, 1992, granting judgment in favor of appellee, B.F.

Goodrich Company, was erroneous for the reason that there was a genuine issue of fact and appeallee [*sic*] was not entitled to judgment as a matter of law."

Appellant filed a claim for workers' compensation benefits, which was denied at all administrative levels. Appellant subsequently filed a complaint in the court of common pleas, which alleged that on or about November 16, 1987, he sustained an injury in the course of and arising out of his employment with appellee. Appellant's complaint sought the right to participate in the workers' compensation fund. Appellee and the administrator of the Bureau of Workers' Compensation filed answers which denied that appellant's injuries were sustained in the course of and arose out of his employment with appellee. Depositions of appellant, Lloyd D. Dennis, M.D., Robert H. Wyatt, M.D., and Lisa Rogers, D.O., were filed. These depositions provided the following pertinent evidence.

On November 16, 1987, appellant was working as an inspector at a manufacturing plant owned and operated by appellee. Appellant was operating an embossing machine. He had previously noticed fumes at the plant. Appellant's nose started running, and he went to a nearby restroom and blew his nose. When appellant returned to the embossing machine, a coworker asked him if he was OK and he responded affirmatively. The next thing appellant remembered, he was on his hands and knees in a hallway leading to another restroom on the other side of the plant, with a broken jaw, a broken finger, and an inability to straighten his back. Appellant was unaware of what had caused his injuries and there were apparently no witnesses as to what happened to him. Appellant spent the next seven days in a hospital and three months thereafter at home recuperating. Appellant then returned to work at the plant until he experienced blurred vision, dizziness and chronic headaches. After eight months of attempting to work, appellant quit due to his medical problems. Prior to the November 16, 1987 incident, appellant had never experienced the foregoing symptoms and had never blacked out or fainted at home or at work.

Dr. Dennis, a board certified family practitioner, initially evaluated appellant at the time of his hospitalization in November 1987. Dr. Dennis concluded that appellant had suffered a syncopal episode, *i.e.*, a lack of consciousness, on November 16, 1987. Although he initially believed that the syncopal episode was due to a seizure or convulsive disorder, subsequent testing made it unlikely that either a seizure or convulsive disorder caused the incident. Dr. Dennis was unable to determine what had caused the syncopal episode despite a multitude of tests and referrals. Nevertheless, Dr. Dennis testified that he was able to rule out all preexisting physical weaknesses, diseases or conditions that could have caused appellant's syncopal episode. Dr. Dennis additionally testified that

through extensive neurological studies, a vasovagal [1] response was not a likely cause of the syncope, although electrophysiologic studies could be used to rule out such cause. However, Dr. Dennis reiterated that given his evaluation of appellant, no significant preexisting condition could have caused the syncope.

Dr. Dennis referred appellant to Dr. Wyatt, a neurologist. Dr. Wyatt conducted several tests on appellant and was unable to determine what had caused the incident of November 16, 1987. Dr. Wyatt testified that he could not rule out a preexisting condition but further felt that appellant's symptoms were most likely posttraumatic. Dr. Wyatt further testified that he did not have any specific knowledge of any preexisting condition that might have caused appellant's syncopal episode. Additionally, Dr. Wyatt indicated that fumes might cause a person to black out but that he was unable to determine that fumes at the manufacturing plant had caused appellant's injuries.

Appellant was also referred to Dr. Rogers at the Cleveland Clinic, and she saw appellant on one occasion. Dr. Rogers concluded that she was unable to determine the cause of appellant's November 16, 1987 incident, but thought a seizure was possible. Dr. Rogers testified that she was unable to completely rule out idiopathic causes for appellant's injuries.

Appellee subsequently filed a motion for summary judgment based upon the deposition testimony. Appellant also relied on the deposition testimony in filing a memorandum in opposition to the summary judgment motion. On October 29, 1992, the common pleas court granted summary judgment in favor of appellee and determined that appellant was not permitted to participate in the Workers' Compensation Fund.

 Appellant's sole assignment of error asserts that the common pleas court erred in granting summary judgment to appellee. In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, *i.e.,* we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic*

---

1. A vasovagal attack is a transient vascular and neurogenic reaction marked by pallor, nausea, sweating, bradycardia and rapid fall in arterial blood pressure which, when below a critical level, results in loss of consciousness. *Dorland's Illustrated Medical Dictionary* (27 Ed.1988) 167. It is most often evoked by emotional stress associated with fear or pain. *Id.*

*v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; cf. *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

The Supreme Court of Ohio has held that regardless of who may have the burden of proof at trial, the burden is upon the party moving for summary judgment to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597, paragraph two of the syllabus; *Beard v. Mayfield* (1991), 73 Ohio App.3d 173, 176, 596 N.E.2d 1056, 1058; *Horizon Savings v. Wootton* (1991), 73 Ohio App.3d 501, 504, 597 N.E.2d 1150, 1152–1153. However, the Supreme Court of Ohio recently has held that a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing with approval *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; see, also, *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 278, 595 N.E.2d 855, 858. *Wing* did not expressly overrule *AAAA Enterprises* or any of the litany of summary judgment cases placing the initial burden upon the movant. See, *e.g., Mitseff, supra.* Indeed, *Wing* cited *Mitseff* with approval. *Wing, supra,* 59 Ohio St.3d at 111, 570 N.E.2d at 1099.

Application of the third paragraph of the *Wing* syllabus has resulted in some difficulty for Ohio appellate courts in attempting to divine its holding in light of prior case law. See, *e.g., Renz v. Kenwood Dealer Group, Inc.* (Aug. 4, 1992), Hamilton App. No. C–910571, unreported, 1992 WL 188567 (Gorman, J., dissenting); *Simms v. Dayton Pub. Schools* (Apr. 21, 1992), Montgomery App. No. 12799, unreported, 1992 WL 80782 (Fain, P.J., concurring). In *Few v. Cobblestone, Inc.* (Oct. 17, 1991), Montgomery App. No. 12490, unreported, 1991 WL 96315, the Second District Court of Appeals held that *Wing* did not change the burden of production in summary judgment cases:

"We asked the parties to brief the application of *Wing v. Anchor Media* (1991), 59 Ohio [St.] 3d 108 [570 N.E.2d 1095], to the facts of this case and whether the Supreme Court has enunciated a change to the burden of production in summary judgment motions. We conclude that the Supreme Court has not.

"While the syllabus of a Supreme Court opinion provides the controlling point of law on any given issue, *Baltimore & Ohio R.R. v. Baillie* (1925), 112 Ohio St. 567 [148 N.E. 233], Rule 1(B), S.Ct. Rule for the Reporting of Opinions, the

syllabus must be read in light of the facts of that case. *Baillie, supra,* at syllabus paragraph 2.

"In *Wing,* the trial court granted summary judgment to the defendant because Wing failed to produce evidence that the promise that he would be able to purchase equity in a television station was made falsely; since the promise was not made falsely, one crucial element of fraud was not met, and as a matter of law he was not entitled to judgment. Based upon the materials submitted by Anchor Media, Wing could not possibly show that the promise made to him was false, because the promise of equity participation was conditioned upon his still being employed by Anchor Media at a later time, and he no longer was. Because the evidentiary material submitted by Anchor Media in support of its motion for summary judgment conclusively established that Anchor Media had not breached its promise, Anchor Media in fact met its traditional burden, as the movant, of establishing that there was no genuine issue of material fact. See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112 [526 N.E.2d 798], and *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548 [91 L.Ed.2d 265]."

■ Upon consideration of the foregoing authorities, we are persuaded that *Wing* did not overrule either *AAAA Enterprises* or *Mitseff* but merely reiterated the nonmovant's burden following the movant's satisfaction of its initial burden. *Few, supra.* We do not interpret *Wing* to mean that in a negligence case, where the moving party solely argues that no material issue of fact exists concerning causation, the opposing party must show a factual dispute not only as to causation, but also as to duty, breach, and damages in order to survive a motion for summary judgment. In sum, the "any issue" language of the *Wing* syllabus simply means any issue upon which the movant meets its initial burden. If the movant argues that none of the elements of the opposing party's case can be met, then the opposing party must produce evidence upon each element. However, if only one element is contested by the movant, it is not logical to require the opposing party to contest that which has not been placed at issue by the movant. With the foregoing standards in mind, we now consider the merits of appellant's argument on appeal.

■ A compensable injury for purposes of the workers' compensation act includes "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C); see, also, R.C. 4123.54. It is fundamental that there must be a causal connection between an injury arising out of, and received in the course of, a worker's employment and his harm or disability. *State ex rel. Webb v. Indus. Comm.* (1991), 76 Ohio App.3d 701, 703, 602 N.E.2d 1265, 1266. Workers' compensation is directed essentially at compensating a worker for lost resources and earnings. *Kerans v. Porter Paint Co.* (1991), 61

Ohio St.3d 486, 490, 575 N.E.2d 428, 431, citing *Byrd v. Richardson–Greenshields Securities, Inc.* (Fla.1989), 552 So.2d 1099.

An injury caused by an unexplained slip or fall presents a unique case. *Waller v. Mayfield* (1988), 37 Ohio St.3d 118, 122, 524 N.E.2d 458, 462; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 546 N.E.2d 975. The evidence here was uncontroverted that appellant's injury was received "in the course of" his employment with appellee. The dispositive issue is whether appellant's injury arose out of his employment pursuant to R.C. 4123.01(C). In *Waller, supra,* at paragraph two of the syllabus, the Supreme Court of Ohio held that in workers' compensation cases involving an unexplained fall, the claimant has the burden of eliminating idiopathic causes. For workers' compensation purposes, idiopathic refers to an employee's preexisting physical weakness or disease which contributes to the accident. *Id.,* 37 Ohio St.3d at 121, 524 N.E.2d at 461, fn. 3; *Grimes v. Mayfield* (1989), 56 Ohio App.3d 4, 7, 564 N.E.2d 732, 735, at fn. 1. Once idiopathic causes for an unexplained fall have been eliminated, an inference arises that the fall was due to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises. *Waller, supra,* at paragraph three of the syllabus.

The summary judgment evidence indicated that appellant suffered an unexplained episode, and there was no medical evidence that directly linked appellant's employment as the cause of his syncopal episode. Furthermore, Dr. Wyatt and Dr. Rogers testified in their depositions that they had been unable to completely rule out idiopathic or preexisting causes for appellant's injuries. Therefore, pursuant to *AAAA Enterprises, Mitseff,* and *Wing,* appellee arguably satisfied its initial summary judgment burden and shifted the burden to appellant to produce Civ.R. 56(C) evidence that eliminated idiopathic causes for his unexplained syncopal episode. In attempting to meet this burden, appellant could rely upon the evidentiary material submitted by appellee, *i.e.,* the depositions of the various physicians and appellant, in support of appellant's assertion of a genuine issue of material fact. *AAAA Enterprises, supra,* at paragraph two of the syllabus.

Dr. Dennis, appellant's treating physician, specifically testified that he was able to rule out all preexisting physical weakness, diseases, or conditions, *i.e.,* all idiopathic reasons, that could have caused appellant's syncopal episode. Appellee asserts that the foregoing testimony is of "limited value" because Dr. Dennis further testified in his deposition that electrophysiologic studies could be used to rule out the possibility that a vasovagal attack caused the syncope. At trial, the trier of fact is free to rely on all, part or none of the testimony of each witness. *State v. Harriston* (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144, 1148;

see, also, *In re Pryor* (1993), 86 Ohio App.3d 327, 620 N.E.2d 973. Analogously, when construing summary judgment evidence most strongly in favor of the nonmoving party, courts should credit those portions of a witness's testimony favorable to the nonmoving party. The fact that Dr. Dennis's deposition testimony is arguably inconsistent goes merely to the weight of his testimony and does not render his opinion ruling out all idiopathic causes incompetent summary judgment evidence. Cf. *Hughart v. Greenfield Research, Inc.* (Oct. 8, 1991), Highland App. No. 772, unreported, 1991 WL 207259 (a *party* may not recant an admission made in a deposition by subsequently filing his/her affidavit controverting the party's prior deposition testimony).

Therefore, Dr. Dennis's deposition testimony was sufficient, when construing it most strongly in appellant's favor, to eliminate idiopathic causes for appellant's injuries and raise the inference that the unexplained syncopal episode arose out of appellant's employment, *i.e.*, appellant's injuries were compensable under the workers' compensation act. See, *e.g.*, *Porter v. Tamarkin Co.* (June 26, 1992), Trumbull App. No. 91–T–4540, unreported, 1992 WL 276622. Appellee further cites the statement in *Waller, supra,* at 37 Ohio St.3d at 125, 524 N.E.2d at 464, that the inference "does not relieve claimants of their burden of proving causal connection to employment." However, appellee takes this statement out of context, and a complete reading of the Supreme Court's language accompanying that statement indicates that the inference is sufficient to withstand either a directed verdict as in *Waller,* or as in this case, summary judgment:

"Therefore, we also hold that in a workers' compensation case where idiopathic causes for an unexplained fall have been eliminated, an inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises. Such a result does not relieve claimants of their burden of proving causal connection to employment. The inference is reasonable that the fall was caused by the employment environment once claimant meets his burden of eliminating idiopathic causes and there is no evidence that any force or condition independent of the employment caused the fall.

"We do not find this to be an untenable view when it is considered that the claimant is engaged in the duties of his employment on his employer's premises and is exposed to the risks inherent in the work environment. *Where the course of employment test is fully met, where cause-in-fact cannot be directly established, and where the claimant has met his burden of eliminating idiopathic causes, we interpret the Workers' Compensation Act to allow the inference that the unexplained fall arose out of the employment.*" (Emphasis added and footnote deleted.) *Id.;* 37 Ohio St.3d at 125, 524 N.E.2d at 464–465.

The Supreme Court of Ohio recently reiterated that because summary judgment is a procedural device to terminate litigation, it must be awarded with caution and doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140. Appellant met his burden pursuant to *Wing* and *Waller* and was entitled to the benefit of the *Waller* inference. The foregoing inference was sufficient to preclude summary judgment in favor of appellee. Accordingly, for all of the foregoing reasons, appellant's assignment of error is sustained, the judgment of the common pleas court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GREY, J., concurs.

STEPHENSON, J., concurs separately.

STEPHENSON, Judge, concurring.

I concur generally in the majority judgment and in the reasoning of the principal opinion. I write separately, however, to address several points. First, there is indeed a conflict between the *Wing* case and cases such as *AAAA Enterprises* and *Mitseff* which place the burden on the moving party to show the absence of a genuine issue of material fact on summary judgment.[1] The principal opinion presents a cogent solution for resolving that conflict. Another possible solution is advanced by one of our esteemed colleagues, who writes that we could "limit the change in the usual summary judgment test [under *Wing*] to those cases where the evidence is within plaintiff's control and where defendant has been unable with due diligence in discovery to find any evidence * * * sufficient to avoid a directed verdict at trial." McCormac, Ohio Civil Rules Practice (2 Ed.1992) 161–162, Section 6.33D. There does not appear to have been any problem with discovery in this case and the evidence submitted on summary judgment seems too weak to support a directed verdict in appellant's favor at

---

1. The principal opinion lists a number of cases in which Ohio courts have struggled to reconcile the *Wing* syllabus with prior case law. I would add the following decisions to that list. *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 95, 585 N.E.2d 384, 393–394 (Wright, J., concurring in part and dissenting in part) and *Little Forest Medical Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 623, 575 N.E.2d 1164, 1176, at fn. 5 (Wright, J., dissenting) (In these cases, Justice Wright argues that the court's majority failed to apply the test in the *Wing* syllabus and should have reached the opposite result); see, also, *Johnson v. Univ. of Cincinnati* (1991), 68 Ohio App.3d 141, 144, 587 N.E.2d 469, 471 (wherein the First District Court of Appeals perceived the conflict between *Wing* and *Mitseff* and held that *Wing* should not be read so broadly as to overrule *Mitseff* that the moving party has the burden of producing evidentiary materials).

trial. Thus, under either the approach taken by the principal opinion or that proposed by Judge McCormac, I agree that the initial burden in this case rested with appellee to show the absence of a genuine issue of material fact.

That being said, I am not as persuaded as the principal opinion that appellee met this burden. The critical factual issue in this case is whether appellant's syncopal episode was the result of an idiopathic cause. A fall and resultant injury arising from an idiopathic cause are generally not compensable. *Waller, supra,* 37 Ohio St.3d at 123, 524 N.E.2d at 462. It follows that an employer would be entitled to summary judgment on that issue only if it can show, pursuant to Civ.R. 56(C), that there was an idiopathic cause for the fall and resulting injury. The deposition testimony submitted below indicates problems among the experts in ruling out idiopathic causes for the incident at issue herein. That testimony, however, does not establish that there was an idiopathic, or preexisting, cause for the syncopal episode. Appellee did not satisfy its initial burden under Civ.R. 56(C) and, therefore, I join in reversing the judgment of the lower court.