DECISION AND JUDGMENT ENTRY
Jennifer and Raymond Morgan appeal the grant of summary judgment by the Pickaway County Court of Common Pleas. They argue that the trial court erred in granting summary judgment because genuine issues of material fact remain. Because we find that the alleged hazard of the ride from which Jennifer fell was open and obvious, we disagree that the trial court erred in granting summary judgment on their premises liability claim. Because we find that genuine issues of material fact remain as to whether Jennifer asked for help in exiting the ride, whether Jennifer acted reasonably in exiting the ride, and whether Darren Palmer acted reasonably by not helping Jennifer exit the ride, we agree that the trial court erred in granting summary judgment on the Morgans' general negligence claim. Accordingly, we affirm in part and reverse in part the trial court's judgment.
 I.
Jennifer and Raymond Morgan filed a complaint against Kissel Brothers Shows, Incorporated and Dwayne and Macek Kissel (collectively referred to as "Kissel Brothers") alleging that Jennifer suffered injuries while exiting from a ride belonging to Kissel Brothers Shows, Incorporated at the Circleville Pumpkin Show in 1998. The complaint also alleged that Raymond suffered a loss of consortium as a result.
Kissel Brothers filed a motion for summary judgment arguing that since Jennifer was engaged in a recreational activity, she had to allege that Kissel Brothers caused her injury in a reckless or intentional manner. The Morgans responded by arguing that Jennifer was a business invitee and, therefore, Kissel Brothers owed her a duty to exercise reasonable care for her protection and safety. The Morgans attached a copy of the employee handbook of Kissel Brothers Shows, Incorporated to their motion for summary judgment. The handbook required employees to assist patrons on and off the ride if necessary.
Darren Palmer operated the ride from which Jennifer fell. He testified in his deposition that his job was:
 "the people that couldn't get out, to go around and help them. If there's any other people on the ride that's elderly that can't get off the ride, if I see them, if they call me over, I go over to help them because I get a lot of people on that ride that don't — they just get out on their own, they don't ask for help or nothing like that."
Darren Palmer also testified that Jennifer did not ask for help to exit the ride.
Jennifer testified in her deposition about the accident as follows:
Q. Did you ask for any help getting down?
A. No, not at that point.
Q. Who got out first?
A. Merissa, my granddaughter. She jumped down.
Q. She didn't ask for help and you didn't ask him to help?
A. No, he was just standing there beside the ride.
Q. Who got out next?
 A. She jumped down, and then she turned around and held her arms up, and I handed her Dillon to get off at that point, and then I made a statement to the guy there, "I don't know if I can get off this or not." And he didn't do anything. He just stood there. So I — — you have to turn around and get off backwards because you can't get off forwards.
Q. Okay.
 A. You have to turn around and get off, so I did that and he was standing there right beside me, and when I turned around, I had got down, and when I had jumped down, because it was — a pretty good ways, jumped down, and I was holding onto the sides of the ride, and I told him "I think I broke my leg" because I heard it pop, and he didn't do anything. * * *.
In its reply to the Morgans' memorandum opposing summary judgment, Kissel Brothers disputed that Jennifer was a business invitee. They argued that even if she had been a business invitee, the distance that Jennifer had to travel to get off of the ride was open and obvious. They also disputed that they had a duty to assist Jennifer in getting down from the ride. They argued that she never asked for help and was not forced to jump from the ride.
The Morgans responded and argued that the meaning of Jennifer's statement to the ride operator was a genuine issue of material fact and precluded summary judgment.
The trial court granted summary judgment to Kissel Brothers. In so doing, the trial court determined that the alleged hazard, i.e., the distance that Jennifer had to traverse to get to the ground, was open and obvious. The trial court concluded that Kissel Brothers owed no duty to warn Jennifer of the danger. The trial court also determined that the Morgans failed to show that Jennifer asked for assistance or that Kissel Brothers failed to give assistance in getting off of the ride.
The Morgans appeal and assert the following assignments of error:
 I. The Trial Court erred in granting summary judgment in favor of Defendant-Appellee.
 II. The Trial Court erred in ruling as a matter of law that Plaintiff-Appellant did not ask for assistance down off the amusement ride and/or that Defendant-Appellee did not fail to offer such assistance; and (sic)
 III. The Trial Court erred in ruling as a matter of law that Defendant-Appellee had no duty to warn Plaintiff-Appellant because the danger encountered was open and obvious.
 II.
In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.Midwest Specialties, Inc. v. Firestone Co. (1988), 42 Ohio App.3d 6, 8. Summary judgment is appropriate when the following have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in its favor. Bostic v. Connor (1988),37 Ohio St.3d 144, 146; State ex rel. Coulverson v. Ohio Adult ParoleAuth. (1991), 62 Ohio St.3d 12, 14; Civ.R. 56(C).
The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Additionally, a motion for summary judgment forces the nonmoving party to produce evidence on any issue (1) for which that party bears the burden of production at trial, and (2) for which the moving party has met its initial burden. See Dresher v. Burt (1996),75 Ohio St.3d 280; Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the syllabus; and Stewart v. B.F.Goodrich Co. (1993), 89 Ohio App.3d 35.
An action based upon negligence of another requires proof of four elements: (1) a duty owed the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) injury; and (4) causation of the plaintiff's injury by the defendant's breach of duty. Menifee v. OhioWelding Products, Inc. (1984), 15 Ohio St.3d 75, 77; Tackett v. Ball
(Sept. 23, 1998), Jackson App. No. 97CA822, unreported.
 III.
Because the Morgans do not separately argue the assignments of error as required by App.R. 12 and 16, and because all three of their assignments of error claim that the trial court erred in granting summary judgment, we consider all three assignments of error together. We first examine the Morgans' premises liability claim.[1]
A visitor who is rightfully on the premises occupied by another for purposes in which the possessor has a beneficial interest is an "invitee."Scheibel v. Lipton (1951), 156 Ohio St. 308, paragraph one of the syllabus. In order for Kissel Brothers to have a legal duty to Jennifer, they must have had occupation and control of the premises. Gladon v.Greater Cleveland Regional Transit Authority (1996), 75 Ohio St.3d 312;Berkowitz v. Winston (1934), 128 Ohio St. 611. In order to have the control needed to impose liability, the occupier must have the right and ability to admit or exclude people. Brown v. Cleveland Baseball Co. (1952), 158 Ohio St. 1. Here, Kissel Brothers had occupation and control of the premises (the ride and its surrounding area) and the right to allow people to enter the area for the limited purpose of riding the amusement ride. See e.g. Fraizer v. Ullom Realty (Feb. 13, 1998) Lawrence App. No. 97CA19, unreported (realtor conducting open house had occupation and control of house). Viewing the facts in the light most favorable to the Morgans, reasonable minds can only conclude that Jennifer was an invitee.
An owner or occupier has a duty to exercise ordinary reasonable care for the safety of invitees, including warning them of latent or concealed perils of which the occupier knows or has reason to know. Where a condition is patent or obvious, the invitee is expected to take care of herself unless the danger is said to be "unreasonably dangerous." SeeGladon; Light v. Ohio University (1986), 28 Ohio St.3d 66; Jackson v.Kings Island (1979), 58 Ohio St.2d 357; Betts v. Windland (Nov. 4, 1991), Washington App. No. 90CA39, unreported. Moreover, an owner or occupier is not an insurer of the invitees' safety. Jackson. The duty to the invitees arises only when the owner or occupier knows or should know of the dangerous condition. Jackson. An occupier's duty is predicated on the superior knowledge of a dangerous condition on the premises.Jackson. Therefore the duty arises only upon a showing that the owner or occupier knew or should have known of the dangerous condition. Cornellv. Aquamarine Lodge (1983), 12 Ohio App.3d 148.
The owner or occupier has no duty to protect an invitee against dangers "which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, citing Sidle v. Humphrey (1968), 13 Ohio St.2d 45. This rule applies equally to owners and operators of amusement rides.Jackson, supra. See, also, Centers v. Leisure International, Inc. (1995), 105 Ohio App.3d 582, 584. Thus, where a condition is "patent or obvious, the business invitee is expected to protect herself, unless the condition is unreasonably dangerous." Pokrivnak v. Par Mar Oil Co. (Nov. 6, 2000), Washington App. No. 99CA31, unreported, citing Sidle, supra. If an invitee has actual knowledge of the alleged danger, she is expected to protect herself against the danger. Paschal v. Rite Aid Pharmacy, Inc. (1985), 13 Ohio St.2d 45, paragraph one of the syllabus. See, also, Raflov. Losantiville Country Club (1973), 34 Ohio St.2d 1 (invitee had prior knowledge of "abnormally high" step because she entered club via same staircase from which she exited the club, injuring herself; therefore, step was open and obvious to invitee); Centers v. Leisure (1995)105 Ohio App.3d 582 (amusement ride patron who entered ride via same platform where he fell after the ride was over had actual knowledge of the layout of platform; therefore, platform's alleged defect was open and obvious).
The Morgans allege that whether the ride represented an open and obvious risk is a genuine issue of material fact for the jury. Kissel Brothers argue that the undisputed facts reveal that because Jennifer knew the distance of the ride to the ground, the alleged hazard was open and obvious to Jennifer.
Here, Jennifer watched her granddaughter get down from the ride and handed her grandson to her granddaughter. She then remarked "I don't know if I can get off this or not." Even when viewing this evidence in the most favorable light to the Morgans, reasonable minds can conclude only that Jennifer knew how far down she would have to step to exit the ride. Thus, the danger was open and obvious. Therefore, we find that the trial court did not err in granting summary judgment to Kissel Brothers on the Morgans' premises liability claim. Accordingly, we overrule their third assignment of error and overrule in part their first assignment of error.
 IV.
However, our analysis does not end simply because the Morgans do not have a claim for negligence based upon premises liability. Under general negligence principles, Kissel Brothers and their employees had a duty to exercise due care in their interaction with invitees. Jackson at 359 (owner-occupier "owes a duty to exercise ordinary or reasonable care for [invitees'] protection"). The Morgans argue that the employee handbook indicates that Kissel Brothers assumed a duty to help people off the ride when necessary. Thus, we must consider the competing duties of Jennifer to act in a reasonable manner when confronted with an open and obvious danger and of Kissel Brothers to act in a reasonable manner.
A legal duty may be created by contract, statute, or common law. Here, Kissel Brothers, as owners and occupiers, owed Jennifer Morgan the duty to exercise ordinary or reasonable care for her protection. Jackson. By definition, reasonable care included assisting her from the ride if it was necessary. Whether such help was necessary requires an examination of the reasonable care standard and is dependent upon the circumstances in any situation. That is, did the duty to exercise ordinary or reasonable care require the owners or occupiers to assist Morgan given the attendant circumstances. Thus, whether Palmer was required to help Jennifer Morgan is dependent upon the circumstances in this situation. Kissel Brothers merely communicated this duty to its employees through the employee handbook. The handbook could not create the duty, as the Morgans argue, because it existed prior to the handbook's creation and independent of it.
We find that there are genuine issues of material fact about whether Jennifer acted reasonably in exiting the ride and about whether Kissel Brothers' employee Darren Palmer acted reasonably. Her statement that "I don't know if I can get off this or not" could be construed as asking for help. Darren Palmer testified that he did not hear the statement. However, the Civ.R. 56 materials do not indicate how long Jennifer waited for help before exiting the ride or whether she repeated her request for help or sought help from another source. Viewing the facts in the light most favorable to the Morgans, we cannot say that reasonable minds can conclude only that Darren Palmer acted reasonably while Jennifer did not. Thus, we find that the trial court erred in granting summary judgment on the Morgans' general negligence claim. Accordingly, we sustain their second assignment of error and sustain in part their first assignment of error.
 V.
In sum, we overrule the Morgans' third assignment of error, sustain their second assignment of error, and overrule in part and sustain in part their first assignment of error, and affirm in part and reverse in part and remand the judgment of the trial court for proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________ Kline, J.:
Evans, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only with Attached Concurring Opinion.
[1] At oral argument, the Morgans asserted that they have never based their claim on a duty to warn. However, they assert such an argument in their third assignment of error.