DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pike County Common Pleas Court judgment that (1) overruled a motion to hold Michael L. Dadosky, defendant below and appellee herein, in contempt of court; and (2) determined the effective date of the child support obligation imposed on Patricia D. Dadosky, plaintiff below and appellant herein.
 {¶ 2} The following errors are assigned for our review:[2]
FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR CONTEMPT WHEN APPELLEE HAD FAILED TO PROVIDE APPELLANT PARENTING TIME IN ACCORDANCE WITH THE UNDERLYING COURT ORDER."
SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ABUSED ITS DISCRETION IN CHANGING THE EFFECTIVE DATE OF APPELLANT'S CHILD SUPPORT OBLIGATION."
 {¶ 3} The parties married on March 23, 1985 and one child was born as issue of that marriage (Michael Jacob Dadosky ("Jake") (d/o/b 2-6-1988)). On January 19, 1996, appellant filed for divorce. Subsequently, appellee filed a counterclaim and asked for a divorce. On November 4, 1996, the trial court terminated the marriage, named appellant as the residential parent and ordered appellee to pay child support.
 {¶ 4} Over the years, Jake's relationship with his mother became increasingly volatile. In May of 2002 (when Jake was fourteen), Jake and his mother fought over him playing football. Appellant told Jake to "get out of the house" and called her ex-husband "to come get him."[3] Jake lived with his father at that point and on June 7, 2002, Jake's father (appellee) filed a motion to modify custody.
 {¶ 5} On December 2, 2002, the trial court granted appellee's motion. In so doing, the court noted that appellant's relationship with Jake had "deteriorated" to such a point that it is now in Jake's best interest for his father to be designated the residential parent. The trial court awarded appellant visitation rights and ordered her to pay child support, but although the court terminated appellee's obligation as of June 7, 2002, it did not explicitly set a date for appellant's support obligation to begin.
 {¶ 6} On January 28, 2004 appellee filed a "request to finalize order" and asked that the trial court set a start date for his ex-wife's support obligation payments. Appellee further suggested that the court use a June 7, 2002 start date because this was the date his support obligation was terminated and because Jake lived in his home at that point. The following day, appellant filed a motion asking that her ex-husband be held in contempt for failing to provide visitation.
 {¶ 7} Although both matters came on for hearing on September 23, 2004, the parties devoted almost all of their time to the visitation issue. It was uncontroverted that since 2002, appellant had no overnight visitation with Jake. She said that Jake would spend designated weeknight evenings with her, but would not go for weekend visits unless she agreed to return him to his father's residence for the night. When she refused, Jake would not go with her. Both Jake and his father testified, however, that mother and son established a routine for the first two years when she would return Jake on weekend nights and that it was only recently that she insisted that her son spend the night. Jake testified that he did not want to spend the night at his mother's residence because she is "mean and hateful" and constantly belittles his father.
 {¶ 8} On October 22, 2004 the trial court held: (1) that it could not find appellee in contempt because he did not impede court ordered visitation; and (2) that appellant's child support obligation effective date should be June 7, 2002 (the same date appellee's support obligation terminated). This appeal followed.[4]
 I {¶ 9} Appellant asserts in her first assignment of error that the trial court erred by not holding her ex-husband in contempt. We disagree.
 {¶ 10} The decision whether to hold a person in contempt lies within the trial court's sound discretion. State ex rel. Ventrone v. Birkel
(1981) 65 Ohio St.2d 10, 11, 417 N.E.2d 1249. An appellate court will not reverse a trial court's decision in this regard absent an abuse of that discretion. Bryant v. Bryant, Gallia App. No. 04CA9, 2005-Ohio-1297, at ¶ 16; In re C.M., Summit App. No. 21720, 2004-Ohio-1984 at ¶ 10; In reHoward, Butler App. Nos. CA2001-11-264, CA2001-12-281 CA2001-12-282, 2002-Ohio-5451 at ¶ 11.
 {¶ 11} We note that an abuse of discretion is more than an error of law or judgment; rather it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Landis v. Grange Mut. Ins.Co. (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyardby Marriott L.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; Stateex rel. Solomon v. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. In reviewing for an abuse of discretion, appellate courts must not simply substitute their judgment for that of the trial court. See State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254;In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Indeed, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, and not the exercise of reason but, instead, passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1; also see Bragg v. Hatfield, Vinton App. No. 02CA567, 2003-Ohio-1441, ¶ 22.
 {¶ 12} Appellant does not contend that her ex-husband actively impeded her visitation with Jake. She does argue, however, that he has not done enough to require Jake to comply with visitation. Appellee cites our previous holding in Caldwell v. Caldwell, Gallia App. No. 02CA17, 2003-Ohio-1752, ¶ 23, for the proposition that under Ohio law, parents must do more than simply encourage children to visit non-custodial parents. She thus concludes her ex-husband did not take sufficient steps to ensure that Jake made overnight visits on weekends and that he should have been held in contempt of court. We are not persuaded.
 {¶ 13} The Caldwell case is distinguishable from the present case in several important ways. First, the non-custodial parent in Caldwell
received no visitation at all. Id. at ¶ 3. By contrast, the uncontroverted evidence adduced in the instant case shows that Jake does spend time with his mother — he simply refuses to spend the night at her house.[5]
 {¶ 14} Second, the children in Caldwell were apparently thirteen (13) and nine (9) years old. In the case at bar, Jake was approaching seventeen (17) at the time of the trial court hearing. This court noted in Caldwell that a minor must be compelled to attend visitation with non-custodial parents "[u]ntil the minor is of an age at which he or she can affirmatively and independently decide not to have any visitation with a parent." Id. at ¶ 23. We need not decide whether Jake is currently of such an age because that issue is not properly before us. We do note, however, that it is difficult to compel a sixteen or seventeen year old to visit a non-residential parent than a thirteen or nine year old. As the trial court aptly noted, this case presents a dilemma because the judge could not "physically go out and put him in the car" if Jake refused to spend the night with his mother.
 {¶ 15} Another distinction with the Caldwell case is that the non-custodial parent appears to be part of the problem. The trial court noted in its October 22, 2004 judgment that part of the reason Jake would not spend the night with his mother is that she "derides [his father] in his presence." This is amply supported in the record. Jake testified that he was "tired of hearing [his mother] say how [his] dad's brainwashed [him] and uh, how he's trying to steal [his] money and how he's gonna just die because he has cancer."[6] Also, evidence appears in the record that appellant consented to her son not spending the night at her house for the first two years she had visitation, thus establishing a routine to that effect, and had only recently began demanding that Jake make overnight visitations.
 {¶ 16} All this aside, however, the greatest distinction between this case and Caldwell is that evidence was adduced below to indicate that appellee attempted to actively compel Jake to visit appellant. Although appellant testified that she was not aware of any such action, Jake and his father both testified to the contrary. Jake stated that after he refused to go with his mother for overnight visits, his father got "mad" and forbade him to go "to one of [his] friend's house." Similarly, appellee recounted that he would not let Jake "go to his buddy's house" after he refused to visit his mother and that he had also on occasion limited his son's computer privileges.
 {¶ 17} At this juncture, we emphasize that a trial court is in a better position than an appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations in weighing credibility. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Moreover, the trier of fact is free to believe all, part or none of the testimony of any witness who appears before it. Rogers v. Hill (1998), 124 Ohio App.3d 468, 470,706 N.E.2d 438; Stewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35,42, 623 N.E.2d 591; also see State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144.
 {¶ 18} In the case sub judice, the trial court opted to believe appellee and concluded that he had taken sufficient steps to compel Jake to visit appellant. We find no abuse of discretion in that determination.
 {¶ 19} Accordingly, based upon the foregoing reasons we hereby overrule appellant's first assignment of error.
 II {¶ 20} Appellant asserts in her second assignment of error that the trial court erred in changing the effective date of her support obligation from December 2, 2002 to June 7, 2002. We disagree with appellant.[7]
 {¶ 21} First, we reject the underlying premise of appellant's argument that the trial court "changed" the effective date of her support obligation. A cursory glance at the December 2, 2002 entry reveals that no start date is explicitly specified. Indeed, that is the reason appellee filed his "request to finalize order." Second, the June 7, 2002 start date is reasonable because this is the date ordered for appellee's child support obligation to terminate and because Jake was no longer living with appellant. Indeed, appellant admitted during her testimony that Jake lived with his father in May, 2002.
 {¶ 22} Decisions as to when court ordered support will commence or terminate is left to the trial court's sound discretion and will not be reversed absent an abuse of discretion. See Blaner v. Blaner, Trumbull App. No. 2003-T-42, 2004-Ohio-3678, at ¶ 8; Davenport v. Davenport,
Belmont App. No. 02 BE 47, 2003-Ohio-4877, at ¶¶ 21-22; Lassiter v.Lassiter, Hamilton App. No. C-010309, 2002-Ohio-3136, at ¶ 7. Once again, we cannot find that the trial court abused its discretion in this matter. Indeed, in light of appellant's admission that Jake began residing with his father in May, 2002, we find nothing arbitrary, unreasonable or unconscionable in ordering her to pay support effective the following month.
 {¶ 23} For these reasons, we hereby overrule appellant's second assignment of error. Having considered both "errors" assigned and argued in the briefs, and having found merit in neither, we hereby affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is hereby ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment Opinion
[2] We note that appellant neglected to designate "assignments of error" in her brief as required by App.R. 16(A)(3). We will treat the issues in her "statement of the issues presented" as "assignments of error."
[3] Appellant denied that she intended to "throw him out" permanently and was simply angry because Jake "pushed [her] up against the desk."
[4] Appellee argued that his ex-wife's motion to hold him in contempt was without basis. He requested attorney fees at the conclusion of the September 23, 2004 hearing and argued that the contempt proceedings were "ridiculous." The trial court did not expressly rule on his request. Thus, we treat his request as being impliedly overruled. See Takacs v.Baldwin (1995), 106 Ohio App.3d 196, 209, 665 N.E.2d 736; Kline v.Morgan (Jan. 3, 2001), Scioto App. Nos. 00CA2702 00CA2712; State v.Hall (Feb. 17, 1993), Gallia App. No. 92CA2 92CA3. Otherwise, if we treated the trial court's inaction as deferring the issue for later adjudication, the October 22, 2004 judgment would be interlocutory and we would have no jurisdiction to review this matter. See e.g. Ft. FryeTeachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn. (1993),87 Ohio App.3d 840, 843, 623 N.E.2d 232; Cole v. Cole (Nov. 8, 1993), Scioto App. No. 94CA2146; Pickens v. Pickens (Aug. 27, 1992), Meigs App. No. 459.
[5] Our comments here should not be misinterpreted as excusing any failure to comply with visitation orders. Custodial and non-custodial parents alike should strictly comply with the terms of those orders. That said, we simply point out that the facts in the present case are not as severe as in Caldwell which may have contributed to the trial court's decision not to find appellee in contempt of court.
[6] We note that during her testimony, appellee displayed a belligerent attitude toward her ex-husband and, to a lesser extent, to her son. Appellee even exclaimed at one point that Jake "intends to harm [her]" and has threatened "he would tear up [her] stuff."
[7] We note that the argument sub-heading in appellant's brief for this "assignment of error" does not correspond to the actual "assignment of error" set out in her statement of issues at the beginning of her brief.