OPINION
Although this appeal was submitted on the accelerated calendar, we elect to issue a full opinion pursuant to Loc.R.12(5).
In May 1991, Plaintiff-Appellant, Mary White, filed a complaint for divorce against John Gamble in the Marion County Court of Common Pleas. The divorce action was apparently concluded in January 1993, although, because the relevant decree is not included, the record does not disclose whether the Marion County Common Pleas Court completely distributed all of the marital assets at that time. As discussed more fully infra, it appears from the testimony before the Bankruptcy Court that the 1993 divorce decree awarded appellant an equitable interest in two of six antique cars owned by appellant and her then husband. The equitable interest awarded appears to have been in the form of an "election" right. (See page 59, "Exhibit P" attached to appellant's Memorandum-Contra). The record before us does not disclose whether or not appellant made any formal choice from the six automobiles by way of filing documentation with the court or otherwise.
In July 1993, approximately seven months after the divorce, appellant filed her voluntary petition for bankruptcy, Chapter 7, in the U.S. Bankruptcy Court, Northern District of Ohio, Western Division. Defendant-Appellee, Malcolm Goodman, served as trustee for appellant's bankrupt estate. Appellant listed as assets a 1911 Model T Ford Touring Car and a 1915 Model T Ford Touring Car in the "Schedule B — Personal Property" filed with her bankruptcy petition. This same schedule indicates appellant did not have possession of either automobile.
During the administration of appellant's bankruptcy estate, appellee-trustee inquired of appellant's former husband, Mr. Gamble, about the condition of the 1915 Model T. Appellee claims Mr. Gamble informed him that the 1915 Model T was "`in pieces' and thus, relatively valueless." (Goodman Affidavit, ¶ 6).
On October 1, 1993, appellee filed a "Report of Trustee In No Asset Case" asserting, in part, the following:
 That I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there are is (sic) no property available for distribution from the estate and above that exempted by law. (White Memorandum-Contra, "Exhibit E").
On December 27, 1993, the U.S. Bankruptcy Court entered an "Order Approving Trustee's Report of no Distribution and Closing Estate." Appellant was thereby released from all dischargeable debts and appellee was discharged as trustee for the estate. (White Memorandum-Contra, "Exhibit F").
On October 13, 1995, nearly two years after appellant's bankruptcy proceeding was concluded and appellee was discharged as trustee, appellee sent appellant's divorce attorney, Gary Gottfried, a letter. In pertinent part, the letter stated:
 * * * I am the Trustee for the U.S. Bankruptcy Court in Toledo, for this County and others in this area, Mrs. White, by her attorney, Mr. Harris, filed bankruptcy in 1993, and listed 2 cars in dispute in her schedules. At the creditor's meeting she stated Mr. Gamble had the cars in various places, but she was unsure where. After talking with him, I then believed him at the time that the cars were `in pieces' and not what they were disclosed to be in this matter. I told her if the cars came into being with value, I would re-open the bankruptcy case and administer the asset if she was to receive any value. (Emphasis omitted).
 Please be notified that is my intent as to the one vehicle I understand the Court allowed her to receive. I have told her, and Mr. Harris, in the past, I am very willing to strike some compromise, but she cannot take this vehicle without dealing with the aspects of her bankruptcy filing. (White Memorandum-Contra, "Exhibit J").
Also attached to appellant's memorandum-contra is a letter to appellant from Mr. Gottfried, dated November 19, 1995. (White Memorandum-Contra, "Exhibit H"). In the letter, Mr. Gottfried stated:
* * *
 I have also spoken with Malcolm Goodman, the trustee in bankruptcy. Mr. Goodman and I spoke last Friday (November 3rd) regarding the trustee's claim to a portion of the proceeds from your acquisition of either one or both of the antique cars. According to Mr. Goodman there was an agreement between you, Mr. Goodman and Mr. Harris whereby the vehicles would be sold and each of you would receive one-third (1/3) of the proceeds. * * *
Appellant also attached to her memorandum-contra a letter from appellee to appellant, dated February 20, 1996. In pertinent part, that letter provided:
 * * * I have been notified by the Court records that you now are entitled to the 1915 Ford. As I explained some time ago, your petition did list the vehicles, and I still have an obligation to go forward with the aspect of the case not completed. I would like to meet with you with the hope of resolving this to both our satisfaction. I will be glad to answer questions; I do not feel you need an attorney with you. * * * If I do not hear from you I will assume you have no intent of trying to resolve this in your favor, and I will proceed on my own with this problem. (White Memorandum-Contra, "Exhibit K").
On March 11, 1996, appellee moved the U.S. Bankruptcy Court to reopen appellant's case. The reason cited by appellee for the motion was that at the time of the original bankruptcy proceeding, "he was told by debtor's husband that a 1915 Ford vehicle was not operable, and not worth a significant price to the estate. It was listed in the petition as not in debtor's possession. This statement has now been proven to have been misleading, and the Trustee wishes to re-open the estate for the specific purpose of attempting to sell this vehicle." (White Memorandum-Contra, "Exhibit L").
On September 9, 1996, appellee filed a "Trustee's Notice of Sale" indicating appellee wanted to sell the vehicle for the sum of $7,500.00. (White Memorandum-Contra, "Exhibit M). On September 13, 1996, appellee sent appellant a letter advising her that the proposed purchaser of the automobile was John Gamble. (White Memorandum-Contra, "Exhibit N").
On October 9, 1996, the Bankruptcy Court held a hearing on appellee's motion to re-open appellant's case. (See "Exhibit P" attached to White's Memorandum-Contra). Both appellee and appellant were afforded the opportunity to comment extensively on the propriety of appellee reopening the bankruptcy case. During the hearing, appellee asserted that he filed a "No Asset Report" because at the time of appellant's bankruptcy proceeding, (1) the ownership of the 1915 Ford was contested, (2) the automobile was being restored by Mr. Gamble and was "in pieces" and appellee believed it best to wait until the automobile was completed before recovering the vehicle, and (3) following a 1996 decision by the Common Pleas Court, appellee received a telephone call from Mr. Gamble's attorney, Mr. Firstenberger, informing appellee that appellant had been specifically awarded the 1915 Ford; appellee expressed concern that if he did not reopen the case, Mr. Firstenberger would contact the Bankruptcy Court and the U.S. Trustee claiming appellee was not performing his job as trustee appropriately.
We pause to note that with respect to the third ground asserted by appellee at the hearing on his motion to reopen the bankruptcy case, appellee stated:
 I wasn't keen on reopening the case except Mr. Gamble's attorney was now telling me, well, you better do this or I'm going to write the judge, it's an asset of her case. (See Page 12, "Exhibit P," Memorandum-Contra).
Although we need not pass judgment on the actual propriety or ethical responsibility of reopening a bankruptcy case in response to threats made by an attorney wholly unrelated to any parties in interest to the bankruptcy proceeding, we do pause to comment on the appearance
of impropriety in this particular case. By "Trustee's Notice of Sale" dated September 9, 1996, appellee notified appellant that he intended to sell the automobile for the sum of $7,500.00. Apparently in response to a request of appellant, on September 13, 1996, appellee informed appellant, by letter, that the proposed buyer was Mr. Gamble, appellant's ex-husband. We find it perplexing that the proposed buyer would be Mr. Gamble, the same person who, according to appellee, misled appellee three years earlier about the condition and value of the automobile and whose legal counsel threatened to accuse appellee of neglecting his duties as a bankruptcy trustee.
Based on the statements of the parties as well as various documentation provided, the Bankruptcy Court concluded:
 * * * [T]his case is really fully administered and there's really nothing for this Court to really administer, nor is there anything the Trustee has a right to pursue, so therefore this 1915 Model T is not property of the estate, the objections of the Debtor are well taken and the Trustee's notice of intent to sell should be denied. * * *
 I understand that, you know, this is a very complex, very tricky case, but this just kind of points up the fact that, you know, there's got to be some finality to these bankruptcy cases because really one of the duties of the trustee is to try to act judiciously as compatible with the best interest of the party, wind up the estate and get the case closed and creditors paid off if there's any money in there * * *
The essence of the Bankruptcy Court's decision was that in 1993 the Trustee abandoned any interest he had when he elected not to take possession of the automobile, whether it was in pieces or otherwise.
On August 17, 1997, appellant filed a Complaint with the Court of Common Pleas of Marion County. In the Complaint, appellant alleges in substance the following with respect to appellee:Count I: Appellee accepted representations that appellant's then husband no longer owned a 1911 Ford and that a 1915 Ford was "in pieces" despite contentions to the contrary by the plaintiff and despite representations not being under oath. Appellee was going to sell the 1915 Ford in 1995 and was claiming a one-third interest in any proceeds. In 1996, appellee accepted without question an appraised value of the 1915 Ford between $4,500.00 and $5,000.00. Also in 1996, appellee attempted to get an order from the Bankruptcy Court to sell the 1915 Ford, claiming the vehicle was a newly discovered asset. Appellee intended to sell the vehicle to Mr. Gamble, appellant's now ex-husband, and keep one-third of the proceeds. Count II: Asserts that appellee conspired to deprive appellant of her legal rights and property and conspired to defraud appellant as to the value and location of her property.Count III: Asserts the actions of appellee were willful and wanton misconduct. Count IV: Asserts the actions of appellee were willful, wanton and malicious misconduct and fraud.Count V: Asserts appellee violated his legal and professional obligations to appellant.[1]
Appellant claims that as a result of the aforementioned actions, she has suffered, inter alia, serious and emotional distress, pain and suffering, and incurred attorneys fees and expenses.
On February 20, 1998, appellee filed a Motion for Summary Judgment. In support of his motion, appellee attached an affidavit. On March 24, 1998, appellant filed a Memorandum-Contra to appellee's Motion for Summary Judgment. In support of her Memorandum-Contra, appellant attached an affidavit along with numerous exhibits. On April 8, 1998, appellee filed a Reply to appellant's Memorandum-Contra. Finally, on June 4, 1999, the trial court granted appellee's Motion for Summary Judgment on all counts. It is from the trial court's granting of the Motion for Summary Judgment dismissing her claims against Goodman that appellant now appeals, asserting one assignment of error:
 The Trial Court abused its discretion in granting Defendant-Appellees (sic), Malcolm Goodman's, motion for summary judgment for dismissal as there existed a genuine issue of material fact.
In the interest of clarity, the respective counts will be addressed separately. Although the counts will be addressed respectively, we pause to note that a common thread among each count alleged by appellant is that the attempt by appellee to reopen appellant's bankruptcy case and recover the vehicle was somehow so improper as to give rise to one or more actions in tort. With respect to his failed attempt to reopen the case and recover the automobile, appellee has consistently offered the following characterization:
 There was no success in recovering this vehicle or the value thereof and, therefore, based upon all the evidence before me, Mary Ann White's bankruptcy case was again closed in October of 1996. (Emphasis added). (See Goodman Motion For Summary Judgment, ¶ 9, Appellee's Brief, page 2, 6).
Such characterization of appellee's actions to the Court of Common Pleas and this Court is disingenuous at best. From the documents in the record, we observe that appellee did not decide after weighing all of the evidence before him to close the case. The Honorable Walter Krasniewski, Judge of the United States Bankruptcy Court, decided, after weighing all of the evidence before him, to close the case in October of 1996. These same documents simply imply that, had the ultimate decision rested with appellee, he would have disposed of the vehicle; keeping one-third of the proceeds.
We also pause to note various observations with respect to the parties in this case. First, we observe that the existence of the asset, the 1915 Ford, was not concealed by the debtor. We recognize, however, that there is some question of fact concerning whether the asset had value at the time of the bankruptcy proceeding, or gained value after discharge. In the event the asset gained value more than six months after discharge, the asset would never be includable as a bankruptcy asset. However, on the record before us, it is clear that the condition and value of the asset at various times is disputed and therefore presents a genuine issue of material fact.
Second, we observe appellee has apparently made sworn, inconsistent statements in the bankruptcy court, the court of common pleas, and in this Court. Such inconsistencies include, but are not limited to, the reasons and timing of appellee's decision to move to reopen the case and the knowledge appellee had concerning the condition of the vehicle during the bankruptcy proceeding. Such inconsistencies indicate the presence of genuine issues of material fact to be resolved by a trier of fact and not in a summary judgment motion.
We turn now to an analysis of the Counts alleged in appellant's Complaint. The standard for determining when a motion for summary judgment is properly granted pursuant to Civ.R. 56(C) is set forth in Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, which states:
 Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798, 801-802. In addition, a motion for summary judgment forces the nonmoving party to produce evidence on any issue (1) for which that party bears the burden of production at trial, and, (2) for which the moving party has met its initial burden. SeeStewart v. B.F. Goodrich Co. (1993), 89 Ohio App.3d 35,623 N.E.2d 591, and Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.
"[The] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. * * * [T]he moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264, 274.
When a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere allegations of his pleading, but his response must set forth specific facts showing that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 51,567 N.E.2d 1027, 1031. "Summary judgment is appropriate where the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial."State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,449, 663 N.E.2d 639, 641.
COUNT I:
Appellant asserts, in Count I of her Complaint, that appellee was, in essence, negligent in his duties as a bankruptcy trustee for failing to further investigate the condition and value of the 1915 Model T Ford as it existed in 1993.
We begin our discussion of this Count by noting the jurisdiction necessary for this Court, and likewise the Common Pleas Court of Marion County, to hear this case.
 It is undisputed that a trustee in bankruptcy is an officer of the Court, Bankruptcy Act § 1(22), 11 U.S.C. § 1 (22); Bankruptcy Act § 33, 11 U.S.C. § 61; and that as such, he is not subject to suit without leave of the appointing court for acts done in his official capacity and within his authority as an officer of the Court. (Citations omitted).
Leonard v. Vrooman (C.A. 9, 1967), 383 F.2d 556, 560, cert. Denied, 390 U.S. 925, 88 S.Ct. 925, 19 L.Ed.2d 985; See Baron v.Barbour (1881), 104 U.S. 126, 128, 131, 26 L.Ed. 672 (court of the District of Columbia has no jurisdiction to entertain suit against receiver appointed by a court of the State of Virginia without leave of the appointing court); Vass v. Conron Bros. Co. (C.A. 2, 1932), 59 F.2d 969, 970 (bankruptcy court may enjoin action in state court against receiver in bankruptcy where not commenced with leave of the appointing court); In re: Campbell (D. Idaho 1981), 13 B.R. 974, 976 (permission of the bankruptcy court is a prerequisite for state-court action against trustee in bankruptcy for acts done within his authority as trustee). Consequently, if appellee were acting within the scope of his official capacity and within his authority as an officer of the Federal Court, neither this court, nor the Marion County Court of Common Pleas has jurisdiction to consider the case absent leave granted by the Bankruptcy Court. To determine whether we have jurisdiction, we must examine the conduct complained of by appellant.
We believe an analysis of appellant's Complaint and Memorandum- Contra to the Motion for Summary Judgment indicates the conduct appellant complains of in Count I was within the official capacity of appellee as trustee and within his authority as an officer of the Federal Court. Consequently, without leave from the Bankruptcy Court, neither this Court, nor the Common Pleas Court, has jurisdiction to consider the merits of Count I of appellant's Complaint. Accordingly, the judgment of the Common Pleas of Maron County is affirmed with respect to Count I of the Complaint.
Counts II, III and IV:
Appellant asserts, in Count II of her Complaint, that appellee conspired to deprive her of her rights and property and conspired to defraud appellant as to the value and location of her property. In Count III of her Complaint, appellant asserts that appellee engaged in willful and wanton misconduct. In Count IV, appellant alleges that appellee engaged in willful, wanton and malicious misconduct and fraud.
We begin collective analysis of these Counts by first noting that, as alleged, we believe such conduct occurring after appellee was discharged as trustee would not fall within his official capacity as trustee nor within his authority as an officer of the Federal Court. Consequently, the Common Pleas Court had, and this Court has, jurisdiction to consider the merits of Counts II, III and IV of appellant's Complaint.
The crux of appellant's assertions with respect to the Second Count is that appellee conspired with Mr. Harris and Mr. Gamble to sell the vehicle to Gamble for $7,500.00 whereupon appellee and Mr. Harris were going to each take one-third of the proceeds and appellant would take the remaining one-third, nothing going to creditors apparently. Further, appellant asserts in her Complaint that appellee conspired with Sens Auto Museum to deliver to her a different vehicle of less value than that awarded by the Domestic Relations Court.
Although somewhat ambiguous as plead, we read appellant's Third Count to allege conduct on the part of appellee that amounts to abuse of process. That is, if appellee had tortious motives or intentions with respect to reopening the case and seizing the automobile, moving to reopen the case amounts to a claim in the nature of abuse of process.
Finally, the Fourth Count is similar to the Third in that appellant appears to be alleging conduct constituting malicious abuse of process. Additionally, appellant alleges that appellee willfully, wantonly and maliciously engaged in fraudulent conduct. Again, if appellee had tortious motives or intentions with respect to reopening the case and seizing the automobile, moving to reopen the case because of those motive or intentions amounts to a claim in the nature of abuse of process or fraud.
Appellee's Motion, including his affidavit and Reply to appellant's Memorandum-Contra, was dedicated primarily to a discussion of the process of establishing the standard of care for a bankruptcy trustee and the proof necessary to demonstrate a breach thereof. In fact, appellee asserts that "since all of [appellant's] claims against Mr. Goodman are contingent upon proving an initial breach of duty, and since an initial breach cannot be proven, all of [appellant's] claims against the moving party must fail." (Goodman Motion for Summary Judgment). Conversely, appellant asserts that "[appellee] contends that the actions complained of by [appellant] were in furtherance of his fiduciary duty as bankruptcy trustee and that he acted properly and with due diligence. As set forth in the affidavit of [appellant] this is simply not the case." (White Memorandum-Contra).
As discussed supra, we believe an analysis of appellant's Complaint and Memorandum-Contra to the Motion for Summary Judgment indicates the conduct appellant complains of in Counts II-IV was not conduct within the official capacity of a trustee nor within his authority as an officer of the Federal Court as a matter of law. Concerning Counts II, III, and IV, the primary issue is what motive and/or intent did appellee have when he attempted to reopen appellant's bankruptcy case? Appellant alleges, inter alia, that appellee was conspiring to deprive her of her property, engaged in willful and wanton misconduct, and engaged in willful, wanton and malicious misconduct and fraud. Consequently, a motion for summary judgment must address the essential elements of the respective claims for relief.
Appellee had the initial burden of informing the trial court of the basis for his Motion for Summary Judgment, and identifying those portions of the record that demonstrated the absence of a genuine issue of material fact. Appellee was required to specifically point to some evidence that affirmatively demonstrated that appellant had no evidence to support her claims. Appellee failed in this regard where Counts II, III and IV are concerned. Because appellee's pleadings were focused on addressing the standard of care for a bankruptcy trustee, he failed to address those facts, or lack thereof, relating to a claim that he acted outside his duties and capacity as a trustee by allegedly conspiring with others to deprive appellee of her rights and property and abusing the bankruptcy process to wrongfully gain benefit for himself and others at appellee's expense. Similarly, he failed to address those facts, or lack thereof, relating to a claim that he acted outside the scope of his duties and capacity as a trustee by allegedly engaging in willful, wanton and malicious misconduct and fraud. Consequently, the trial court erred in granting summary judgment on Counts II, III and IV because appellee failed to meet the threshold burden of demonstrating that no disputed material facts remain to be litigated. Furthermore, in response to appellee's motion, appellant has offered evidence which if believed will support her claims for relief. Accordingly, the Court of Common Pleas' judgment with respect to those Counts is reversed.
Count V
Appellant asserts, in Count V of her Complaint, that appellee violated his "legal and professional obligations" to appellant. We read this Count to allege that appellee, an attorney licensed to practice in Ohio, violated one or more of the Disciplinary Rules contained in Ohio's Code of Ethical Responsibility.
The Ohio Supreme Court has original jurisdiction over the admission to practice law, the discipline of persons so admitted, and all other matters relating to the practice of law. Ohio Constitution, Art. IV, § 2(B)(g). Consequently, the Supreme Court, and neither the Court of Common Pleas nor this Court, has the jurisdiction to consider disciplinary measures upon an allegation that a member of the Ohio bar has violated his professional and legal obligations.
We are mindful of the distinction between an alleged ethical violation and malpractice, however, in this case, appellant has failed to allege the latter where appellee is concerned.[2]
That is, appellant has failed in her Complaint to allege the existence of an attorney-client relationship that might give rise to professional obligations flowing from appellee to appellant to justify reasonable expectations on her part in that regard.
Accordingly, we affirm the judgment of the Court of Common Pleas with respect to Count V.
Finding error prejudicial to appellant, in some of the particulars assigned and argued, we affirm in part and reverse in part the judgment of the Common Pleas Court of Marion County and remand the cause to that Court for further proceedings not inconsistent with this opinion.
Judgment affirmed in part, reversed in part, and remanded.
SHAW and WALTERS, J J., concur.
[1] In Count VI, appellant asserts that the "acts and conduct of defendant Harris constitutes malpractice." She then claims that "as a direct and proximate result of the wrongful acts and conduct of defendants Harris and Goodman" she suffered damages. We read this Count as not implicating appellee as appellant does not assert appellee committed malpractice; she only asserts that "defendant Harris" engaged in such conduct.
[2] See Footnote #1