ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
{¶ 1} Relator, Barry Staff, Inc., has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's motion to terminate temporary total disability ("TTD") compensation to respondent Diana L. Henderson ("claimant"), and to enter a new order granting relator's motion to terminate TTD compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator generally contends that the evidence relied upon by the commission does not demonstrate that the allowed condition in the claim was the sole and independent cause of claimant's disability. Relator first challenges the magistrate's finding that a C-84 report, dated April 16, 2003, constitutes some evidence that the allowed condition independently caused claimant's disability. We note that the staff hearing officer ("SHO"), in the order mailed May 16, 2003, stated that such order "is based upon the medical reports of Dr. Martinez (04/16/2003, 12/20/2002, 06/12/2002) and the evidence adduced at hearing." On the C-84 dated April 16, 2003, Dr. Martinez certified TTD for the period at issue based upon the allowed condition, i.e., the report lists ICD-9 Code 836.0 (the code designation for tear of medial cartilage or meniscus of the knee). A review of the C-84 report does not indicate reliance upon a non-allowed condition, and we find that the magistrate did not err in finding that the document provides some evidence that the allowed condition independently caused the disability.
 {¶ 4} Relator next argues that the magistrate erred by failing to properly address the role of a lateral meniscus tear, a non-allowed condition, in claimant's period of disability. However, as noted by the magistrate, the SHO's order mailed May 16, 2003 does not state that the commission relied upon the reports of Dr. Bernard Bacevich, who examined claimant at relator's request, and the commission was only required to identify the evidence it relied upon. See, e.g., State ex rel.Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577-578. Moreover, although Dr. Bacevich opined that claimant had a "pre-existing unstable knee due to a prior anterior cruciate ligament tear," Dr. Bacevich's reports contain no medical opinions that claimant was disabled as a result of a lateral meniscus tear.
 {¶ 5} Finally, relator contends the magistrate erred in concluding that the December 20, 2002 report of Dr. Martinez constituted some evidence to support the continuation of TTD compensation. Relator argues that it was improper for the magistrate to infer from the report that Dr. Martinez was of the opinion that the tear of claimant's anterior cruciate ligament ("ACL") was not work prohibitive, while the allowed condition was. We are not persuaded. The magistrate found that Dr. Martinez's report provided the commission with an alternative theory to the one presented by relator; specifically, the magistrate noted that Dr. Martinez, in response to Dr. Bacevich's theory that the ACL condition was causing claimant's inability to work, emphasized that claimant was able to work up to the May 8, 2002 injury date even with the torn ACL. Upon review, we agree with claimant that Dr. Martinez's observation that the pre-existing condition did not prevent claimant from working up to that time was consistent with his certification on the C-84 report dated April 16, 2003, and we do not find that the magistrate made an impermissible inference based upon the evidence.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 BOWMAN and SADLER, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Barry Staff, Inc., : Relator, : v. : No. 03AP-825 Diana L. Henderson and : (REGULAR CALENDAR) The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 27, 2004 Pickrel, Schaeffer Ebeling, David C. Korte, Michelle D.Bach and Salvatore A. Gilene, for relator.
E.S. Gallon and Associates, and Richard M. Malone, for respondent Diana L. Henderson.
Jim Petro, Attorney General, and Keith D. Blosser, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} In this original action, relator, Barry Staff, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's December 4, 2002 motion to terminate temporary total disability ("TTD") compensation to respondent Diana L. Henderson on grounds that the industrial injury is allegedly not the proximate cause of her disability, and to enter an order granting relator's motion to terminate TTD compensation.
Findings of Fact:
 {¶ 8} 1. On May 8, 2002, Diana L. Henderson ("claimant") sustained an industrial injury while employed as a temporary laborer for relator, a state-fund employer. On that date, claimant injured her left knee when her left foot slipped forward on a piece of plastic lying on the floor. The injury occurred as claimant was removing parts from a conveyer.
 {¶ 9} 2. On the day following her industrial injury, claimant underwent an MRI of her left knee. The reviewing radiologist opined that the MRI suggests an anterior cruciate ligament tear and a medial meniscus tear. The medial meniscus tear is suggested by an "increased signal in the posterior horn of the medial meniscus." (Emphasis added.)
 {¶ 10} 3. On or about May 10, 2002, claimant completed and filed a claim for workers' compensation benefits. Apparently, relator refused to certify the claim.
 {¶ 11} 4. On June 12, 2002, claimant underwent left knee arthroscopic surgery performed by Enrique Martinez, M.D. In his report, Dr. Martinez describes the operation as: "Arthroscopy, left knee, partial medial and lateral meniscectomy. Debridement of stump, anterior cruciate ligament."
 {¶ 12} 5. The June 12, 2002 operative report from Dr. Martinez further states:
* * * As the scope was brought to the intercondylar fossa, there was a large stump of the anterior cruciate ligament lying into the area. The scope was then moved to the medial compartment. The patient had very large anterior[1] horn fragment with hemorrhagic changes indicating these not to be very old. The scope was then taken to the lateral compart-ment where the patient also had fraying of the lateral meniscus. Proceeded to debride with the debrider. The menisci both medial and lateral, all the fragments present. [Sic.] We changed the portal to medial entrance with the scope and the debrider laterally to finish all the fragments that were still present from the lateral view. The fragment of the anterior [cruciate][2] ligament was very large, measuring a good 5-6 mm in diameter. The stump was [trimmed][3] flat, to relieve any fragments that might be obstructing the movement of the joint.
 {¶ 13} 6. Dr. Matinez's June 12, 2002 operative report makes no mention of the posterior horn of the medial meniscus that was the subject of a finding in the MRI report.
 {¶ 14} 7. On July 10, 2002, Dr. Martinez certified a period of TTD beginning May 14, 2002, based solely upon ICD-9 Code 836.0 which is the code for a tear of the medial cartilage or meniscus of the knee.
 {¶ 15} 8. On August 8, 2002, a district hearing officer ("DHO") heard the issue of the claim's allowance and the request for TTD compensation. The DHO issued an order disallowing the claim. Claimant administratively appealed.
 {¶ 16} 9. Following a September 23, 2002 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO's order and allowing the claim for "torn medial meniscus, left knee." The SHO also awarded TTD compensation from May 9, 2002 to July 10, 2002, based upon Dr. Martinez's July 10, 2002 C-84. The order provided that TTD compensation is to continue upon submission of appropriate medical evidence.
 {¶ 17} 10. Presumably, the Ohio Bureau of Workers' Compensation ("bureau") began paying TTD compensation to the claimant based upon the SHO's order of September 23, 2002, and periodic C-84 reports from Dr. Martinez.
 {¶ 18} 11. On November 27, 2002, at relator's request, claimant was examined by orthopedic surgeon Bernard B. Bacevich, M.D. Dr. Bacevich also reviewed various medical reports relating to the industrial claim. Dr. Bacevich reported:
Prior to this injury, she did have two other injuries to the left knee. She states that in February of 2002 she was walking with her dog in the back yard and got jerked and twisted her left leg and this necessitated an emergency room visit and she recalls that she was discharged from the hospital on crutches and also wearing an immobilizer. She states that she was able to go back to work within a couple days of that incident and, prior to that, she had not had any problems with her left leg. * * * The next injury occurred in March of 2002 when she sat on a picnic table which collapsed and she re-injured her left knee. She was also evaluated medically at that time and, again, recalls being sent back to work with restrictions. She does state that by the time the injury of 05/08/02 had occurred she was off all of her restrictions.
* * *
* * * [I]t appears more probable that the anterior cruciate ligament tear identified at surgery would be a pre-existing condition probably relating to the episode in February of 2002. When one develops a tear of the anterior cruciate ligament, it does take a period of months for the torn ligament to develop the rounded stump-like appearance. Following an acute tear, the ligament will be frayed and hemorrhagic and that was not described by Dr. Martinez. It would be, therefore, my opinion that this woman had a pre-existent anterior cruciate ligament tear prior to the episode of 05/08/02. Having an anterior cruciate ligament tear can cause a knee to be unstable and for it to give way when one steps on a piece of plastic. This could cause additional injury to the knee. When she was worked up with the MRI and taken to surgery, she had only evidence of degenerative fraying of the lateral meniscus and I would absolutely not relate that to any of these traumatic episodes. That would simply be a mild degenerative condition of the meniscus. However, the hemorrhagic medial meniscal tear would more likely be related to the 05/08/02 episode as hemorrhage would not persist from either February or March. It is, therefore, my opinion that it is more likely that the tear of the medial meniscus occurred on 05/08/02 but this occurred because she had a pre-existing unstable knee due to a prior anterior cruciate ligament tear. Surgical treatment by Dr. Martinez was appropriate for such a tear. However, it is also my opinion that her continued problems with the knee more relate to the anterior cruciate tear and the resultant anterior laxity which is still present on her examination. The reason for her continued pain and the reason that she needs current physical therapy is in relationship to continued problems due to a permanent tear of the anterior cruciate ligament which was pre-existent to this injury. It is that chronic tear of the anterior cruciate ligament that does currently preclude her from returning to her work activities. Normally, one recovers from an arthroscopic partial medial meniscectomy within a 2 to 3 week period of time and normally one only requires a home exercise program. Her continued symptoms of pain are, in my opinion, related to the instability in the knee resulting from her prior pre-existent anterior cruciate ligament tear.
 {¶ 19} 12. A review of Dr. Bacevich's report prompted Dr. Martinez to respond in writing on December 20, 2002. In his response, Dr. Martinez agreed with Dr. Bacevich that the fraying of the lateral meniscus involved degenerative changes unrelated to the industrial injury. Dr. Martinez also agreed that the anterior cruciate ligament tear pre-existed the industrial injury. However, Dr. Martinez also criticized Dr. Bacevich's report, stating:
However, at this point the patient has not reached maximum medical improvement because she continues to have difficulties with the knee and again it is very difficult to be so emphatic and dogmatic as Dr. Bacevich is, stating that the patient is limited at this point, not because of the meniscal injury but because of the injuries prior to the meniscal tear. Since the patient was working on 05-01-02 [sic] and there were some problems that the patient may have had, it is difficult to ascertain that the injury was not the final blow which made the patient reach a point that in order to reverse the course of action, she is going to need a long series of physical therapy likely with bracing to give her support in order for her to return to work. I don't believe that at her age one would be inclined to recommend a repair of the anterior crucial ligament however, opinions vary on this subject so one can seek a consultation of one of the Orthopedic Surgeons who are doing the anterior crucial ligament repairs to hear what they have to offer as far as recommendations.
 {¶ 20} 13. In the meantime, on December 4, 2002, citing Dr. Bacevich's November 27, 2002 report, relator moved for the termination of TTD compensation. Relator's motion asserted that claimant's disability is "due to a permanent tear of the anterior cruciate ligament which was pre-existent to the allowed condition."
 {¶ 21} 14. On December 30, 2002, on form C-84, Dr. Martinez certified TTD beginning May 14, 2002 to an estimated return-to-work date of February 3, 2003, based solely on ICD-9 Code 836.0 (tear of medical meniscus).
 {¶ 22} 15. On February 7, 2003, at the bureau's request, claimant was examined by Paul T. Hogya, M.D. Dr. Hogya opined that the industrial injury had reached maximum medical improvement ("MMI").
 {¶ 23} 16. On February 24, 2003, citing Dr. Hogya's report, the bureau moved to terminate TTD compensation on MMI grounds.
 {¶ 24} 17. On March 13, 2003, a DHO heard relator's December 4, 2002 motion to terminate TTD compensation and the bureau's February 24, 2003 motion to terminate TTD compensation. Following the March 13, 2003 hearing, the DHO issued an order denying both motions. The DHO's order states that the decision was based upon Dr. Martinez's December 20, 2002 and June 12, 2002 reports. The DHO ordered that TTD compensation continue based upon submission of appropriate medical evidence.
 {¶ 25} 18. Relator administratively appealed the DHO's order of March 13, 2003. The bureau did not appeal.
 {¶ 26} 19. On April 10, 2003, claimant underwent another left knee MRI at Dr. Martinez's request. The reviewing radiologist opined that there is a tear of the posterior horn of the medical meniscus and a tear of the interior cruciate ligament. The radiologist states in his report that "similar changes were demonstrated on a previous study of 5/09/2002."
 {¶ 27} 20. On April 16, 2003, Dr. Martinez wrote:
Ms. Henderson continues to have difficulties with her MCO regarding the injury sustained at work on the left knee. Dr. Bacevich states that the problems were produced by something different from an injury in January of 2002 rather than the injury at work in May of 2002. This is a very bad position to be taken by Dr. Bacevich with some basis, but not strong support for his position. The patient did work between January and May in the job that she had been doing for a long time. However, after May, she could not work. There is a basis there to explain that the patient did have, at least, an aggravation of a problem since she was able to work from January to May.
At this point, the patient is here because she is having edema in the left lower extremity. She has a "Baker's cyst" that gets back there some time depending on how much activity she carries on with walking on the leg or standing. This is very obvious.
The patient was given a prescription for an antiembolic stocking. We will wait to see what the attorneys decide so we can have a consultation with an orthopedic surgeon regarding the findings on the left knee MRI.
 {¶ 28} 21. On April 16, 2003, on form C-84, Dr. Martinez certified TTD from May 14, 2002 to and estimated return-to-work date of August 1, 2003, based solely upon ICD-9 Code 836.0.
 {¶ 29} 22. Relator's administrative appeal from the March 13, 2003 DHO's order was heard by an SHO on May 14, 2003. Following the hearing, the SHO issued an order affirming the DHO's order. The SHO's order states:
The Hearing Officer finds that the injured worker's condition remains temporary. The injured worker has not reached maximum medical improvement and the injured worker's condition has not become permanent.
The Hearing Officer further finds that the injured worker remains unable to return to and perform the duties of the injured worker's former position of employment as a result of this industrial injury.
This order is based upon the medical reports of Dr. Martinez (04/16/2003, 12/20/2002, 06/12/2002) and the evidence adduced at hearing.
 {¶ 30} 23. Relator filed a notice of appeal from the SHO's order of May 14, 2003.
 {¶ 31} 24. On May 21, 2003, Dr. Bacevich issued an addendum to his November 27, 2002 report based upon the April 10, 2003 MRI. Dr. Bacevich's addendum states:
On review of the MRI report of the left knee dated 05/09/02, the anterior cruciate ligament was not well seen and there was an abnormal signal in the posterior horn of the medial meniscus but the anterior horn appeared to be intact. At the time of surgery Dr. Martinez found hemorrhagic changes along the anterior horn fragment but he did not describe any abnormalities in the posterior horn. Therefore, his surgery did not confirm the abnormalities suspected in the posterior horn of the medial meniscus. When she had the MRI repeated on 04/10/03, there were still similar increased signal in the posterior horn of the medical meniscus. It was still described as reaching the articular surface.
This description is the same description that was present on 05/09/02. It is my opinion that since a meniscal tear was not visualized during the June surgery that I see no indications for arthroscopic intervention for a re-tear of the medial meniscus. There has been no change in the MRI description of the posterior horn of the medical meniscus and a tear of the posterior horn was not confirmed when Dr. Martinez directly inspected the posterior horn at the time of his June, 2002 surgery. Also, since the original tear was anterior and these current MRI findings are located posteriorly, it is a distinctly different area of the medial meniscus and a tear of the anterior horn would not lead to a subsequent tear of the posterior horn.
 {¶ 32} 25. On June 17, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of May 14, 2003.
 {¶ 33} 26. On August 18, 2003, relator, Barry Staff, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 34} The commission denied relator's December 4, 2002 motion to terminate TTD compensation. Relator had alleged that claimant's disability is no longer caused by the left knee medial meniscus tear allowed in the industrial claim. The commission denied relator's motion citing the medical reports of Dr. Martinez dated April 16, 2003, December 20, 2002, and June 12, 2002. Accordingly, the issue here is whether those reports provide some evidence to support a finding that the medical meniscus tear continues to cause disability.
 {¶ 35} Finding that Dr. Martinez's reports provide the some evidence to support the commission's denial of relator's December 4, 2002 motion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 36} A claimant must always show the existence of a direct and proximate causal relationship between his or her industrial injury and the claimed disability. State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452. Nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. Id.
 {¶ 37} The mere presence of a nonallowed condition in a claim for TTD compensation does not destroy the compensability of the claim, but the claimant must meet his or her burden of showing that an allowed condition independently caused the disability.State ex rel. Bradley v. Indus. Comm. (1997),77 Ohio St.3d 239, 242.
 {¶ 38} Here, the anterior curciate ligament ("ACL") tear is undipustedly a nonallowed condition. However, the presence of a pre-existing ACL tear in the left knee does not automatically preclude entitlement to TTD compensation. If the claimant can show that the allowed medial meniscus tear is independently causing disability, she is entitled to TTD compensation regardless of the status of the ACL tear.
 {¶ 39} In his C-84 dated April 16, 2003, Dr. Martinez certified TTD for the period at issue based solely upon ICD-9 Code 836.0, which is the code for the allowed condition of this industrial claim. Thus, the C-84 itself provides some evidence that the industrial injury is independently causing TTD notwithstanding the undisputed presence of an ACL tear in the left knee.
 {¶ 40} Perhaps this court's inquiry could simply end with the above finding that Dr. Martinez's April 16, 2003 C-84 provides some evidence that the allowed condition is independently causing disability.
 {¶ 41} Nevertheless, relator argues here what it presumably argued before the commission. Relator argues that on June 12, 2002, Dr. Martinez repaired the medial meniscus tear and that, according to Dr. Bacevich, one normally recovers from an arthroscopic partial medial meniscectomy within a two-to-three week period and normally one only requires a home exercise program. Based upon Dr. Bacevich's report, relator further argues that relator did not recover within the normal time after her June 12, 2002 surgery because of instability in the knee caused by the pre-existing ACL tear. Thus, relator argues that claimant's disability beyond the normal two-to-three week period following surgery must be attributed to the ACL tear rather than the medial meniscus tear.
 {¶ 42} Relator's theory is not without evidentiary support. In fact, relator's theory is supported by the report of Dr. Bacevich. However, this court must presume that the commission rejected relator's theory and the report of Dr. Bacevich which supports relator's theory. This is so because the SHO's order of May 14, 2003 does not state reliance upon Dr. Bacevich's November 27, 2002 report. The commission was only required to state the evidence it relied upon. State ex rel. Lovell v. Indus. Comm.
(1996), 74 Ohio St.3d 250, 252. The presumption is that the commission considered but was not persuaded by Dr. Bacevich's report. Id.
 {¶ 43} In his December 20, 2002 report upon which the commission specifically relied, Dr. Martinez emphasized, in response to Dr. Bacevich's theory, that claimant was able to work up to the May 8, 2002 injury date even with the torn ACL. Clearly, the inference is that the ACL tear was not work-prohibitive but the medial meniscus tear is. Thus, Dr. Martinez's December 20, 2002 report provided the commission with an alternative theory that contrasted with relator's theory. It is the commission that weighs the evidence before it. It was within the commission's fact-finding discretion to rely upon Dr. Martinez's theory of disability.
 {¶ 44} Moreover, even if it is accepted that an injured worker will normally recover from a medical meniscus repair within two-to-three weeks of the repair, the commission was not required to view claimant's case as being normal. Claimant's left knee was apparently not normal immediately prior to the industrial injury, given the evidence of a pre-existing ACL tear. Even if it is true, as Dr. Bacevich has opined, that the instability of the knee caused by the ACL tear has made recovery from the medial meniscus repair more difficult, that does not negate the causal relationship between the medial meniscus tear and the disability period subsequent to its repair. See State exrel. Webb v. Indus. Comm. (1991), 76 Ohio App.3d 701, 704 (the causal relationship between the industrial injury and disability need not be the sole causal relationship).
 {¶ 45} Relator further argues, based upon the radiologist's report of the repeat left knee MRI that claimant must have sustained a new injury to her left knee after the June 12, 2002 surgery because Dr. Martinez did not identify a posterior horn tear in his operative report. Relator seems to suggest that this alleged new injury could not be causally related to the May 8, 2002 accident. (See relator's brief at 9.)
 {¶ 46} Interestingly, in his May 21, 2003 addendum report wherein the implications of the April 10, 2003 repeat MRI are discussed, Dr. Bacevich does not opine that claimant sustained either a new injury or a reinjury. The theory put forth here, that claimant allegedly sustained a new injury after her June 12, 2002 surgery, is a theory set forth by relator's counsel that is unsupported by any medical opinion of record, including relator's own doctor, Dr. Bacevich. Clearly, speculation of counsel cannot be viewed here as medical evidence or opinion that was before the commission. Moreover, the May 21, 2003 addendum report of Dr. Bacevich was not before the SHO at the May 14, 2003 hearing. Clearly, relator's new injury theory presented here is not an issue before this court in this action.
 {¶ 47} Relator also seems to suggest in its reply brief that Dr. Martinez's December 20, 2002 report indicates that Dr. Martinez is uncertain in his opinion that claimant remains disabled due to the allowed condition of the claim. Relator argues:
* * * Dr. Martinez's reports indicate the presence of a non-allowed condition, the ACL tear, in Henderson's left knee. He even states in his December 20, 2002 report that it is difficult to determine whether the current symptoms are related to the medial meniscus tear or the ACL tear * * *. Nonetheless, he continued to certify temporary total disability benefits * * *. He then later states in his April 16, 2003 report that her injury on May 9, 2002 may have aggravated this condition, resulting in her inability to work. * * * Dr. Martinez's reports reflect not only the presence of a non-allowed condition but also question whether this condition is the cause of Henderson's disability. Therefore, it was improper for the Industrial Commission to continue Henderson's temporary total disability benefits based upon medical from Dr. Martinez.
(Reply brief of relator at 2.)
 {¶ 48} Equivocal medical opinions are not evidence. State exrel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions or fails to clarify an ambiguous statement. Ambiguous statements, however, are considered equivocal only while they are unclarified. Id.
 {¶ 49} Relator's reply brief seems to suggest that the following sentence in Dr. Martinez's December 20, 2002 report must be viewed as an equivocal medical opinion:
* * * Since the patient was working on 05-01-02 [sic] and there were some problems that the patient may have had, it is difficult to ascertain that the injury was not the final blow which made the patient reach a point that in order to reverse the course of action, she is going to need a long series of physical therapy likely with bracing to give her support in order for her to return to work. * * *
(Emphasis added.)
 {¶ 50} In the magistrate's view, relator simply misreads the above-quoted sentence which is undeniably poorly constructed. The magistrate emphasizes the word "not" to explain relator's misreading. By emphasizing the word not, it becomes clear that Dr. Martinez is stating that the difficulty is for Dr. Bacevich to ascertain that the industrial injury was not the final blow causing the need for a long series of physical therapy. After all, Dr. Martinez accuses Dr. Bacevich of being "dogmatic" in the previous sentence. In the magistrate's view, Dr. Martinez did not say that it is difficult for Dr. Martinez to determine that the disability is caused by the medial meniscus tear. Accordingly, this magistrate must conclude that, while Dr. Martinez may demonstrate less than model communication skills, he does not demonstrate an equivocal medical opinion.
 {¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request or a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MacKE MAGISTRATE
[1] There is no indication on the report that the word "anterior" should be replaced with the word "posterior."
[2] The typewritten word posterior is crossed out and the word cruciate is handwritten to replace the deleted word.
[3] The typewritten word drained is crossed out and the wordtrimmed is handwritten to replace the deleted word. The operative report also contains a handwritten notation "OK/ECM" which contains presumably the initials of Enrique C. Martinez indicating that he has approved the handwritten word replacements.